Zurich General Accident & Liability Insurance Company, Ltd., Appellant, *v.* Bethlehem Steel Company, Respondent.

Argued October 10, 1938; decided January 11, 1939.

*Nathan L. Miller, W. W. Miller* and *Redmond F. Kernan, Jr.,* for appellant. The joint resolution does not apply to the obligation to pay Swiss francs in Switzerland. (*Anglo-Continentale Treuhand, A. G.,* v. *St. Louis Southwestern Ry. Co.,* 81 Fed. Rep. [2d] 11; *Ingram* v. *Mandler,* 56 Fed. Rep. [2d] 994.) The resolution struck down only those provisions which the Congress determined to be an obstruction to its power over money and which it declared to be against public policy. (*Norman* v. *Baltimore & Ohio R. R. Co.,* 294 U. S. 240; *Feist* v. *Societe Intercommunale Belge d'Electricite,* [1934] A. C. 161.) The joint resolution did not relieve obligors from the consequences of the devaluation of the dollar in respect to foreign currency obligations. (*Deutsche Bank* v. *Humphrey,* 272 U. S. 517; *Anglo-Continentale Treuhand, A. G.,* v. *St. Louis Southwestern Ry. Co.,* 81 Fed. Rep. [2d] 11.)

*Frederick H. Wood, Hoyt A. Moore, Wm. D. Whitney* and *Robert D. Blasier* for respondent. By the express terms of the joint resolution the coupons are discharged upon payment dollar for dollar. (*Norman* v. *Baltimore & Ohio R. R. Co.,* 265 N. Y. 37; 294 U. S. 240; *Compania de Inversiones Internacionales* v. *Industrial Mortgage Bank,* 269 N. Y. 22; 297 U. S. 705; *Holyoke Water Power Co.* v. *American Writing Paper Co.,* 300 U. S. 324; *Munzinger* v. *United Press,* 52 App. Div. 338; *Exchange Bank* v. *Ford,* 7 Col. 314; *Karasik* v. *People's Trust Co.,* 252 Fed. Rep. 324; 252 Fed. Rep. 337; *Saratoga County Bank* v. *King,* 44 N. Y. 87; *Butterick Pub. Co.* v. *Mistrot-Munn Co.,* 167 App. Div. 632; 217 N. Y. 678; *Hart* v.

*City Theatres Co.*, 215 N. Y. 322; *DeBeerski* v. *Paige*, 36 N. Y. 537; *Cooke* v. *Millard*, 65 N. Y. 352; *Johnson* v. *Joyce*, 90 Minn. 377.) The intent of the Congress was to strike down all obstructions to its currency policy, whether gold clause provisions or any other provisions of like effect. (*Atchison Ry. Co.* v. *United States*, 284 U. S. 248; *Norman* v. *Baltimore & Ohio R. R. Co.*, 294 U. S. 240; *Compania Inversiones Internacionales* v. *Industrial Mortgage Bank*, 269 N. Y. 22; *Perry* v. *United States*, 294 U. S. 330; *Nortz* v. *United States*, 294 U. S. 317; *Holyoke Water Power Co.* v. *American Writing Paper Co.*, 300 U. S. 324; *Spencer* v. *Myers*, 150 N. Y. 269; *City Bank Farmers Trust Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49; *Surace* v. *Danna*, 248 N. Y. 18; *Riggs* v. *Palmer*, 115 N. Y. 506; *Helvering* v. *New York Trust Co.*, 292 U. S. 455; *Sorrells* v. *United States*, 287 U. S. 435.)

O'Brien, J. March 1, 1910, Lackawanna Steel Company, predecessor of defendant Bethlehem Steel Company, issued a series of gold bonds payable March 1, 1950, in United States gold in the sum of $1,000 and also in pound sterling at £205.15.2, guilders at 2,480, marks at 4,200 and francs. If paid in francs in France, Belgium or *Switzerland*, the corporation promised to pay 5,180 francs and interest in the respective currencies. Each coupon contained a promise that, if paid in France, Belgium or *Switzerland*, the corporation would pay 129.50 francs for each six months' interest, and that they were payable not only at New York, but at London, Frankfort, Amsterdam, *Basel and Zurich* at *Schweizerische Kreditanstalt.*

Plaintiff, a Swiss corporation having its principal place of business in Switzerland, purchased 323 of these bonds. On July 16, 1936, it presented 1,132 coupons at *Schweizerische Kreditanstalt at Zurich* and demanded payment at the rate of 129.50 Swiss francs or an aggregate of 146,594 Swiss francs, and on September 7, 1936, it pre-

sented at the same place 323 coupons for payment at the same rate, or an aggregate of 41,828.50 Swiss francs. On both occasions payment in these amounts of Swiss francs was refused. The allegations in the complaint are that on July 15, 1936, the market value of 146,594 Swiss francs in Zurich was $48,009.54 in lawful money of the United States and that on September 7, 1936, the value of 41,828.50 francs was $13,631.90. The relief demanded in the complaint is judgment for $61,766.04 with interest. Judgment has been rendered in favor of plaintiff only for the sum of $36,375 and its complaint was dismissed in respect to its claim of right to receive 129.50 Swiss francs for each coupon. Such judgment resulted upon the theory that plaintiff is not entitled to receive more than the value in United States currency of present legal tender reduced by reason of the Joint Resolution of Congress June 5, 1933 (U. S. Code, tit. 31, § 463).

The question is whether, on the facts of this case, the Joint Resolution is applicable to this obligation to pay foreign currency to a foreign corporation in a foreign country. The courts below have held that it is. We are convinced of the correctness of the contrary result flowing from the decision of the Circuit Court of Appeals, Second Circuit, in *Anglo-Continentale Treuhand, A. G.,* v. *St. Louis Southwestern Ry. Co.* (81 Fed. Rep. [2d] 11 [1936]) wherein the facts were the same as at bar except that payment was made in guilders at Amsterdam instead of francs at Zurich. That court decided that damages recoverable in dollars were required to be calculated at gold par of the guilder and not at the rate of exchange prevailing in New York at the time of the judgment.

On the facts of this case, the obligation was not payable in " money of the United States " but in foreign currency, and, therefore, the Joint Resolution is not applicable. The obligation might have become payable at New York in United States money, but the fact is

that it did become payable in Switzerland in Swiss currency.

The judgments should be reversed and plaintiff's motion for summary judgment granted, with costs in all courts.

FINCH, J. (dissenting). To restrict the phrase " obligation payable in money of the United States " so as to exclude a bond, if in addition, for convenience of foreign bondholders, it also provides for payment in what was meant to be an equivalent amount in Swiss francs, guilders or other foreign currency, would seem to be unduly narrowing a resolution which by its language indicated that it was of the broadest scope. A reading of the Joint Resolution shows it to be a resolution not only broad in scope, but one referring to an obligation as a whole rather than to any particular provisions contained therein. (*Norman* v. *Baltimore & Ohio R. R. Co.,* 294 U. S. 240; *Perry* v. *United States,* 294 U. S. 330.)

Furthermore, a detailed analysis of the language used would seem to show that the ordinary meaning of the language would reach and apply to every obligation issued before or after the 5th of June, 1933, capable of being paid in the United States. Every such obligation shall be discharged upon payment dollar for dollar in any coin or currency which at the time of payment is legal tender for public and private debts. While the first sentence of the resolution considers the obligation as a whole, and strikes down the gold clause, the next sentence provides in the most sweeping language for every obligation which is capable of being paid or may be paid in money of the United States. This language of the Joint Resolution does not exclude a bond payable in money of the United States because such a bond also contains a provision as a matter of convenience for the payment of the same amounts in foreign currencies. An obligation which is payable in money of the United States is no

whit less such an obligation because it also gives the obligee the right to receive the equivalent of this money in foreign currency.

The obligations in suit are certainly capable of being paid in money of the United States, which brings them within the terms of the Joint Resolution. As such they are dischargeable, dollar for dollar in legal tender.

When we consider that the Joint Resolution precludes a court of the United States from enforcing a gold clause provision, we are forced to the conclusion that such courts may not enforce similar provisions of coupons having the same effect.

The intent of Congress being manifest, to strike down gold clause provisions and any other obstructions to its currency policy, it would seem to follow that all similar provisions contained in the principal obligation should be likewise invalid, to the end that a uniform parity should exist as to all obligations which are capable of being paid in dollars.

The judgment appealed from should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, LOUGHRAN and RIPPEY, JJ., concur with O'BRIEN, J.; FINCH, J., dissents in opinion in which HUBBS, J., concurs.

Judgment accordingly.