Bert Randolph SUGAR and Wrestling Revue, Inc., Plaintiffs,

v.

CURTIS CIRCULATION COMPANY et al., Defendants.

No. 74 Civ. 78.

United States District Court, S. D. New York.

Oct. 17, 1974.

Levy & Ledes, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City,

Seth Greenwald, Asst. Atty. Gen., for Justices Fine and Beisheim and himself.

Young, Sonnenfeld & Busner, New York City, for Curtis Circulation Corp., Philip H. Busner, New York City, of counsel.

Gilbert, Segall & Young, New York City, for National Sports Publishing Corp., David C. Reynolds, New York City, of counsel.

Before FEINBERG, Circuit Judge, and LASKER and OWEN, District Judges.

## OPINION

LASKER, District Judge.

This suit attacks the constitutionality of the New York Attachment Statute, CPLR § 6201 et seq., which permits ex parte pre-judgment attachment of the property of a defendant. In particular, it is claimed that CPLR § 6201(4)(5) and (8), and CPLR § 6211,[1] which collectively allow such attachment upon a plaintiff's ex parte allegation that the defendant has defrauded him, violate the due process clause of the Fourteenth Amendment in depriving the defendant of property without prior notice or hearing. Jurisdiction is alleged under 28 U. S.C. §§ 1331(a), 1343(3) and (4), 2201, 2202, 2281 and 2284, and plaintiffs seek declaratory and injunctive relief. By an earlier opinion, 377 F.Supp. 1055 (1974), a single judge found that the complaint presented a substantial constitutional question under the test of Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973) and Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U. S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). This three judge court was convened to hear the matter pursuant to 28 U.S.C. § 2281 et seq.

## I.

Familiarity with the facts set forth in detail in the opinion of the convening judge is assumed. For present purposes it is sufficient to state that in August, 1971 plaintiff Sugar and his controlled corporation, Champion Sports Publishing, Inc. (Champion) contracted with defendant Curtis for the distribution by Curtis of Champion's publications. In the course of their dealings Curtis advanced funds to Champion which it was entitled to recoup under the terms of their agreement.

Sugar's corporate satrapy also included a publisher, Wrestling Revue, Inc., (Wrestling), a plaintiff here. About a year after the consummation of the Champion-Curtis contract, Curtis learned —or came to believe—that it had been defrauded because Wrestling, claiming to own periodicals which Curtis had the right to distribute under the Champion agreement, had contracted to sell some of them to third parties.

Curtis thereupon notified one such third party, National Sports Publishing

---

1. § 6201. Grounds for attachment

An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

4. the defendant, with intent to defraud his creditors, has assigned, disposed of or secreted property, or removed it from the state or is about to do any of these acts; or

5. the defendant, in an action upon a contract, express or implied, has been guilty of a fraud in contracting or incurring the liability; or

8. there is a cause of action to recover damages for the conversion of personal property, or for fraud or deceit.

§ 6211. Order of attachment

An order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment. It shall specify the amount of the plaintiff's demand, be indorsed with the name and address of the plaintiff's attorney and shall be directed to the sheriff of any county or of the city of New York where any property in which the defendant has an interest is located or where a garnishee may be served. The order shall direct the sheriff to levy within his jurisdiction, at any time before final judgment, upon such property in which the defendant has an interest and upon such debts owing to the defendant as will satisfy the plaintiff's demand together with probable interest, costs, and sheriff's fees and expenses.

Corporation (National, a defendant here), that it asserted a claim to moneys payable by National to Wrestling. National's response was to advise Wrestling and Sugar that it was withholding sums payable by National to Wrestling. On March 5, 1973, Wrestling sued National for breach of contract in New York Supreme Court, Westchester County. Subsequent to commencement of the Westchester action, Curtis moved in New York Supreme Court, New York County, without notice to Sugar, Champion or Wrestling, and prior to the filing of a complaint, for an order directing the Sheriff to levy on any property of Sugar, Champion or Wrestling. Curtis' motion, supported by an extensive and detailed affidavit, was based on its claim that:

(a) "Champion Sports has assigned, disposed of or removed property from the State of New York with intent to defraud its creditors" [CPLR § 6201(4)];

(b) "Champion Sports and Sugar, its principal officer, have been guilty of a fraud in contracting or incurring a liability upon an express contract" [CPLR § 6201(5)]; and

(c) "Champion Sports, Sugar and Wrestling Revue are liable to Curtis for damages in a cause of action for fraud and deceit" [CPLR § 6201(8)].

Curtis asserted that it was owed approximately $28,500. plus probable interest, Sheriff's fees and expenses. It posted a $10,000. bond to protect Sugar, Champion and Wrestling against the possibility that its claim was not ultimately proven. On April 13, 1973, still prior to Curtis' commencement of suit against Sugar, Champion and Wrestling, and without notice to them, but in accordance with CPLR § 6201 et seq., Mr. Justice Fine granted the order of attachment.

The attachment order and the consequent sheriff's levy on National,[2] precipitated this suit in which the original roles of the parties are reversed. Sugar and Wrestling are recast as the plaintiffs, while Champion and National are two defendants in a large group including the sheriff and various state officials charged with the enforcement of the statutes under attack.

## II.

Although the facts are relatively complex, the issue before us is a narrow one[3] because several recent Supreme Court decisions have dealt with similar statutes. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L. Ed.2d 406 (1974).

Prior to *Sniadach*, decisions of the Court consistently sustained the constitutionality of prejudgment seizure of property subject to litigation, reasoning that ultimate adjudication on the merits would assure a defendant's rights. See, e. g., Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921); Coffin Brothers & Co. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928) and,

2. In accordance with the sheriff's levy, National paid to the sheriff the moneys which it then owed Wrestling, and it has continued to pay further sums as they accrue. It has also paid the sheriff the sum of $124.17, which it owed to Sugar and which Sugar denominates "wages," whose attachment Sugar claims to violate his due process rights under Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The plaintiffs here claim further violation of their due process rights in that the second sheriff's levy was extended without prior notice or hearing in December,

1973 and April, 1974, for a period to expire March 24, 1975, notwithstanding the facts that Curtis had commenced its action against them, and they had interposed answers denying liability.

3. As a three judge court convened pursuant to 28 U.S.C. § 2281 et seq., we here deal only with the constitutionality of the statute. The earlier decision of the single judge determined that plaintiffs have standing to sue, have not waived their right to assert the constitutional claim here, and that the pendency in state court of the earlier actions does not bar this action.

particularly McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) affirming *per curiam* the constitutionality of a Maine statute which provided for an ex parte order of attachment without requiring a supporting affidavit or plaintiff's bond.[4] *Sniadach* breached this previously impenetrable wall of authority. At issue in that case was the Wisconsin garnishment statute, which permitted a creditor to require the employer of a defendant alleged to be his debtor to withhold part of the defendant's wages pending final adjudication on the merits. The Court invalidated the statute holding that "absent notice and prior hearing [citation omitted] this prejudgment garnishment procedure violates the fundamental principles of due process." 395 U.S. at 342, 89 S.Ct. at 1823. In concurrence Mr. Justice Harlan emphasized "that due process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property *or its unrestricted use*," 395 U.S. at 343, 89 S.Ct. at 1823 (emphasis added). Although *Sniadach* rested on broad principles of due process, its intended impact was carefully limited. As the *Mitchell* Court later observed:

> "*Sniadach* involved the prejudgment garnishment of wages—'a specialized type of property presenting distinct problems in our economic system.' [citing Sniadach] Because '[t]he leverage of the creditor on the wage earner is enormous' and because 'prejudgment garnishment of the Wiscon-

sin type may as a practical matter drive a wage-earning family to the wall,' it was held that the Due Process Clause forbade such garnishment absent notice and hearing. *Sniadach*, 395 U.S. at 341–342 [89 S.Ct. 1820, at 1822, 23 L.Ed.2d 349]. In *Sniadach* the Court also observed that garnishment was subject to abuse by creditors without valid claims. . . ." 416 U.S. at 614, 94 S.Ct. at 1903.

These qualifications limit the significance of *Sniadach* as a guide to the determination of the issue before us.

The ruling in Fuentes v. Shevin, *supra*, is much closer to home. *Fuentes* dealt with the constitutionality of the Florida and Pennsylvania replevin Statutes which, as the *Mitchell* Court observed,

> " . . . permitted the secured installment seller to repossess the goods sold, without notice or hearing and without judicial order or supervision, but with the help of the sheriff operating under a writ issued by the court clerk at the behest of the seller. Because carried out without notice or opportunity for hearing and without judicial participation, this kind of seizure was held violative of the Due Process Clause." 416 U.S. at 615, 94 S.Ct. at 1904.

Starting from the premise that "a temporary nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment," the *Fuentes* court broadened the *Sniadach* rule beyond cases involving the necessities of life, and held that, with limited exceptions,[5] the Due Process Clause

---

4. The Maine statute was declared unconstitutional by a unanimous three judge court (Coffin, Circuit Judge, and Gignoux and Bownes, District Judges) which relied on *Sniadach* and *Fuentes*. Gunter v. Merchants Warren National Bank, 360 F.Supp. 1085 (D.Me.1973). The Massachusetts attachment statute, on which the Maine Act had been modelled, was declared unconstitutional in Schneider v. Margossian, 349 F.Supp. 741 (D.Mass.1972) by a unanimous three judge court (Coffin, Circuit Judge, and Gignoux

and Garrity, District Judges) relying on the same cases.

5. The exceptions included cases in which attachment might be necessary (1) to acquire jurisdiction of the defendant; (2) "to protect the public against [some] sort of immediate harm," where it is "necessary to secure an important governmental or general public interest [and] there has been a special need for very prompt action," 407 U.S. at 91, 92 S.Ct. at 2000; or (3) to guard

requires an opportunity for a hearing prior to a deprivation of property:

"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession from arbitrary encroachment—to minimize substantively unfair or mistaken deprivation of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." 407 U.S. at 80–81, 92 S.Ct. at 1994.

Lower courts generally construed *Fuentes* to hold that, with the exceptions already noted,[6] statutes permitting prejudgment seizure of property without prior notice were at best suspect and at worst unconstitutional; accordingly *Fuentes* toppled a variety of state replevin statutes and similar provisions permitting such ex parte seizures. That case, however, is not the final word on the constitutional adequacy of prejudgment ex-parte seizure of property. In *Mitchell* the Court seriously narrowed the impact of *Fuentes*—so seriously indeed that Justices Powell and Brennan

believed the majority to have overruled *Fuentes*. *Mitchell*, like *Fuentes*, involved a Louisiana statute authorizing ex parte prejudgment seizure of property subject to a vendor's lien. However, the Court found constitutionally significant differences between the Florida and Pennsylvania statutes at issue in *Fuentes* and the Louisiana law before it, whose validity it sustained. The issue before us, therefore, is whether the New York provisions, CPLR §§ 6201(4), (5) and (8) and § 6211, squeeze through the narrow door of constitutionality left open in *Mitchell*, or remain out in the unconstitutional territory charted in *Fuentes*.

*Mitchell* found several procedural assurances which critically distinguished the Louisiana statute from the Florida and Pennsylvania provisions in *Fuentes*: (1) *judicial* approval of the sequestration order was required; (2) the grounds for sequestration had to be clearly demonstrated in the affidavit supporting the writ; (3) the attaching creditor was obliged to post a bond; (4) the buyer (debtor) had the right to regain possession of his property by posting a bond and finally, (5) the statute "entitled the debtor immediately [after sequestration] to seek dissolution of the writ, which must be ordered unless the creditor 'proves the grounds upon which the writ issued,' Art. 3506, the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees." *Mitchell*, 416 U.S. at 606, 94 S. Ct. at 1899.

---

against the demonstrated possibility that the alleged debtor will destroy or conceal disputed goods. 407 U.S. at 93, 92 S.Ct. 1983, 32 L.Ed.2d 556. None of these considerations apply in the case at hand.

6. Even before *Fuentes*, a number of summary prejudgment statutes had been declared unconstitutional on the authority of *Sniadach*. See citations in *Fuentes*, 407 U.S. at 72, note 5, 92 S.Ct. 1983, 32 L.Ed.2d 556. The cases include the decision of a three judge court convened in the Northern Dis-

trict of New York declaring unconstitutional the New York replevin statute. Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970). That statute provided for search and seizure of chattels by the sheriff upon filing of an affidavit and undertaking by the plaintiff, and without prior notice to the defendant or court order. The statute, subsequently cured by amendment, now requires as conditions to the seizure a court order and service by the sheriff of a copy of such order on the possessor of the chattel. CPLR § 7102(b), (d) (1971).

### III.

There is no doubt that, as Curtis argues here, there are substantial parallels between the pertinent CPLR provisions and the Louisiana provisions upheld in *Mitchell*: New York law (CPLR § 6219) meets *Mitchell's* requirements that an attachment order be subject to judicial approval and based on a showing by affidavit that there is a cause of action and establishing one or more grounds for issuance of an order of attachment. Like the creditor in *Mitchell*, moreover, a New York creditor must post a bond to indemnify the defendant-debtor against damages and fees in the event that the attachment is ultimately proven to have been unjustified (CPLR § 6212(b)). Finally, the New York statute, like the Louisiana statute, enables the debtor-defendant to regain possession of his attached property by posting a bond CPLR § 6222. Taken together, therefore, the New York provisions contain all but one of the indices which led the *Mitchell* court to find the Louisiana statute constitutional.

Unlike the Louisiana statute, however, the New York provisions do not grant the debtor-defendant an immediate post-seizure hearing at which the creditor-plaintiff must prove the grounds "upon which the writ issued." (416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406.)

We find that the opportunity for such a hearing was critical to the holding in *Mitchell*, and that its absence renders New York's statute fatally defective.

### IV.

It is true that under the New York law a defendant has the right to move to vacate the attachment. Section 6223 of the statute provides in pertinent part:

"Prior to the application of property or debt to the satisfaction of a judgment, the defendant . . . may move, on notice to each party and the sheriff, for an order vacating . . . the order of attachment. . . . If, after the defendant has appeared in the action, the court determines *that the attachment is unnecessary to the security of the plaintiff*, it shall vacate the order of attachment." (emphasis added)

There are several reasons why § 6223—the sole mechanism available to a defendant who seeks to vacate the attachment—does not meet the standards of the *Mitchell*-Louisiana statute which provided in straightforward language (Article 3506, Louisiana Code of Civil Procedure): "The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, *unless the plaintiff proves the grounds upon which the writ was* issued." (emphasis added)

By its terms, that is, the Louisiana law required that the attachment be vacated unless the grounds upon which it was issued are proven, and imposed the burden of such proof on the creditor.

The New York Statute affords neither protection. The sole basis for vacating the attachment under the CPLR is *not* that the grounds upon which it has been issued are unproven, but rather that the attachment "is unnecessary to the security of the plaintiff"; and the burden of proof is not, as in *Mitchell,* on the plaintiff, but on the defendant.

That this is not too narrow or literal a reading of the language of 6223 is resoundingly confirmed by numerous holdings of the New York courts. Without exception they have ruled—for at least 50 years—that an attachment may not be vacated under § 6223 or its predecessors unless the papers upon which the attachment was based "clearly indicate that the plaintiffs must ultimately fail." Wulfsohn v. Russian Socialist Federated Soviet Republic, 234 N.Y. 372, 377, 138 N.E. 24, 26 (1923). The burden is on the defendant to establish that the plaintiff *cannot* succeed, Bard-Parker Co. v. Dictagraph Products Co., 258 App.Div. 638, 17 N.Y.S.2d 588 (1st Dept. 1940); and to demonstrate that the plaintiff has not established a cause of action which permits attachment, American Reserve Ins. Co. v. China Ins. Co., 297 N.Y.

322, 325, 79 N.E.2d 425 (1948); and to establish that the attachment is unnecessary for the security of the plaintiff, Hydromar Corp. of Delaware v. Construction Aggregates Corp., 32 A.D.2d 749, 300 N.Y.S.2d 797 (1st Dept. 1969); George A. Fuller Co. v. Vitro Corp. of America, 26 A.D.2d 916, 274 N.Y.S.2d 600 (1st Dept. 1966). *See also* B. B. Weit Printing Co., Inc. v. Frances Denney, Inc., 300 F.Supp. 405, 408 (S.D.N.Y.1969).

■ Indeed under the decisions of New York courts, the merits of the action are irrelevant on a motion to vacate the attachment under § 6223—a construction which we believe is proper in the light of the strictly limited wording of the law. Kneapler v. Braufman, 266 App.Div. 756, 41 N.Y.S.2d 261 (2d Dept. 1943); Bard-Parker Co., Inc. v. Dictagraph Products Co., *supra.* As Judge Motley put it in Marklin v. Drew Properties Corp., 280 F.Supp. 176, at 179 (S.D.N.Y.1967):

> "Under the law of New York it is settled that: ' * * * the court should not attempt to decide in advance the merits of the controversy by vacating the attachment unless the complaint and affidavits *clearly indicate* that the plaintiff *must* ultimately fail.' " (emphasis in original)

These considerations alone would be dispositive; but we believe that there are other significant distinctions which place the case at hand within the *Fuentes* rather than the *Mitchell* zone.

First, the plaintiff-creditor in *Mitchell* had by virtue of a vendor's lien an actual possessory interest in the attached property, a fact the Court thought significant:

> "Plainly enough, this is not a case where the property sequestered by the court is exclusively the property of the defendant debtor. The question is not whether a debtor's property may be seized by his creditors, *pendente lite,* where they hold no present interest in the property sought to be seized. The reality is that both seller

and buyer had current, real interests in the property . . ." 416 U.S. at 604, 94 S.Ct. at 1898.

In the case at hand, Curtis has never had a legally cognizable, concurrent possessory interest in the property which it attached; it had only its claim of fraud against Wrestling, Sugar and Champion.

Second, in *Mitchell* the sole issues before the Louisiana court which granted the sequestration order were "the existence of the debt, the lien, and the delinquency." As the Supreme Court commented, "These are ordinarily uncomplicated matters that lend themselves to documentary proof," 416 U.S. at 609, 94 S.Ct. at 1901, ". . . documentary proof is particularly suited for questions of the existence of a vendor's lien and the issue of default." 416 U.S. at 617, 94 S.Ct. at 1905.

Here, on the other hand, the issue before the state court considering the issuance of the attachment order was whether Sugar, Champion and Wrestling had defrauded Curtis. The Supreme Court itself has emphasized that such issues, which involve determination of subjective elements of motive and intent, are notably unsuitable to determination on documentary proof alone. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Indeed, the *Mitchell* court relied upon this principle in distinguishing the facts before it from those present in *Fuentes*:

> "As in Bell v. Burson, *supra* [400 U.S. 963, 91 S.Ct. 376, 27 L.Ed.2d 383], where a driver's license was suspended without a prior hearing, when the suspension was premised on a fault standard, see Vlandis v. Kline, 412 U.S. 441, 446–447 [93 S.Ct. 2230, 37 L.Ed.2d 63] (1973), in *Fuentes* this fault standard for replevin was thought ill-suited for preliminary *ex parte* determination." 416 U.S. at 617, 94 S.Ct. at 1905.

A similar conclusion is mandated here. The questions of fraud alleged by Curtis in its motion for attachment are equally

"ill-suited" for preliminary ex parte determination particularly where, as here, the critical allegations of fraud, however detailed, are based on information and belief.[7]

For the reasons described we find the challenged provisions unconstitutional to the extent that a New York defendant has no meaningful opportunity to vacate an order of attachment granted ex parte and without prior notice. In so holding, we are guided both by the broad rule announced in *Fuentes* and *Mitchell*'s insistence on the continued vitality of that rule. In particular, we find that the distinctive procedural features found in *Mitchell* to validate the Louisiana statute are critically incomplete in the New York scheme as construed by the New York courts.

Settle order on notice.

---

7. Affidavit of Stewart J. Friedman, Paragraphs 5 through 8 inclusive, at pages 84–5 of plaintiff's appendix.