David USDAN, Plaintiff,

v.

DUNN PAPER COMPANY, Defendant.

No. 74-C-981.

United States District Court, E. D. New York.

March 4, 1975.

Martin, Bloom & Van de Walle by James Sawyer, Great Neck, N. Y., for plaintiff.

Reavis & McGrath by Andrew C. Freedman, New York City, for defendant.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

This is a motion, brought on by an Order to Show Cause, for (a) an order pursuant to Rule 64, Fed.R.Civ.P. vacating an *ex parte* order of attachment granted to plaintiff by the Supreme Court, Nassau County, and any levy thereunder; and (b) an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court, Eastern District of Michigan.

The underlying action was originally brought in state court by plaintiff, a New York resident. He claims damages in excess of $48,000 for defendant's alleged breach of a contract which provided for payment of commissions to him for his work as defendant's sales representative. Defendant, a foreign corporation, removed the case to this court.

### A. *Motion to Vacate*

Defendant contends that the order of attachment should be vacated for either of two reasons: (1) Plaintiff's allegations are insufficient to warrant an order of attachment; or (2) the order is unnecessary to plaintiff's security.

### (1) *Sufficiency of Plaintiff's Allegations*

Defendant contends that plaintiff's allegations of damages are insufficient to warrant the order of attachment. Under Rule 64, Fed.R.Civ.P., plaintiff may employ the provisional remedies, including attachment, under the circumstances and in the manner

provided by the law of the state in which the district court is located. Here, attachment is available to the plaintiff only under the circumstances and in the manner provided by New York law, Glaser v. North American Uranium and Oil Corp., 222 F.2d 552 (2d Cir. 1955); Worldwide Carriers, Ltd. v. Aris Steamship Co., 312 F.Supp. 172 (S.D.N.Y.1970).

▆▆ Where there is an unliquidated claim, evidentiary facts must be presented in the affidavits sufficient to form a basis for the computation of damages, see Valentine Dolls, Inc. v. McMillan, 25 Misc.2d 551, 202 N.Y.S.2d 620 (Sup.Ct., Kings Co. 1960). In determining the sufficiency of plaintiff's allegations, the court must consider the evidentiary facts set forth in the affidavit which plaintiff submitted to this court as well as the affidavit submitted to the state court; this is true because under New York law upon a motion to vacate the court must give the plaintiff a reasonable opportunity to correct any defect in his original affidavit, N.Y.C. P.L.R. § 6223; Stines v. Hertz Corp., 42 Misc.2d 443, 248 N.Y.S.2d 242 (Sup.Ct., Kings Co. 1964), reversed on other grounds, 22 A.D.2d 823, 254 N.Y.S.2d 903 (1964), aff'd, 16 N.Y.2d 605, 261 N.Y.S.2d 59, 209 N.E.2d 105 (1965).

▆ In his first cause of action, plaintiff alleges that he is entitled to damages equal to the commissions which he could reasonably be expected to have earned during the approximately eight months between the time of defendant's breach and termination of the initial term of the agreement; in addition, he alleges that pursuant to the terms of the agreement he is entitled to severance pay in an amount equal to fourteen months of commissions, based on the average amount of commissions per month. The total amount of commissions earned by plaintiff during the period in which he was employed by defendant, between July 1, 1968 and November 19, 1970, may be derived from the schedule of commissions and statements of account annexed to plaintiff's July 18, 1974 affidavit; the total amount of commissions earned was $48,076.42. His average monthly commission of $1,717.015 is computed by dividing $48,076.42 by 28, the number of months plaintiff worked for defendant. Damages under the first cause of action are computed by multiplying the average monthly commission by 14 (six months severance pay plus eight months lost commissions). The resulting sum is $24,038.21. Plaintiff's affidavit dated July 18, 1974 indicates that an amended complaint claiming damages in this sum, which differs by a small amount from the sum claimed in the original complaint, will be served on defendant. In view of the foregoing, as to the first cause of action there is no merit to defendant's contention that plaintiff's damage claim is too indefinite to warrant the order of attachment.

In addition to the damage issue, defendant raises the broader question of the sufficiency of plaintiff's allegations. As to the first cause of action, plaintiff's allegations are sufficient to withstand defendant's motion.

▆ Plaintiff's damage claim under his second cause of action is computed in a very different manner than that under the first cause of action. For his second cause of action plaintiff contends that he is entitled to commissions on defendant's alleged sales to Frye Copysystems, Inc., a customer which he allegedly procured for defendant after Frye had ceased doing business with defendant. Plaintiff's affidavit asserts that unidentified representatives of Frye informed him when he first contacted Frye that Frye could "probably" use one hundred tons per month of defendant's one time carbonizing tissue paper. The one hundred ton figure is used, together with prevailing market prices, to arrive at a commission figure which plaintiff claims he would have earned under the breached contract. To this figure, plaintiff adds a six months severance compensation claim (also based on the

one hundred tons per month figure) to arrive at a figure of $70,000. On the basis of this figure, plaintiff "conservatively estimated" his damages at $25,000. It is well settled that plaintiff must present "evidence of damages of sufficient certainty and definiteness" to warrant an attachment, Valentine Dolls, Inc. v. McMillan, 25 Misc.2d 551, 202 N.Y.S.2d 620 (Sup.Ct., Kings Co. 1960). In a claim for an unliquidated sum, plaintiff's allegations as to damages must be more than a "mere matter of speculation," Story v. Arthur, 35 Misc. 244, 71 N.Y.S. 776 (Sup.Ct., Sp. Term, 1901); *see* Gitlin v. Stone, 262 F.Supp. 500 (S.D.N.Y.1967). Plaintiff concedes that he does not know the extent of defendant's sales to Frye. Indeed, there is no evidence in the record indicating that defendant made any sales to Frye beyond those for which plaintiff received commissions. Giving plaintiff the benefit of all inferences that can be made from the facts set forth in the record, the allegations as to damages under the second cause of action still must be deemed speculative.

In view of the foregoing, plaintiff's allegations of damages pursuant to his second cause of action are held insufficient to support the order of attachment. The amount attached should be reduced to $24,038.21, the amended damage claim under the first cause of action, together with probable interest, costs, and sheriff's fees and expenses.

### (2) *Necessity of Order of Attachment to Plaintiff's Security*

█ █ The burden is on defendant to support its claim that attachment is unnecessary to the security of plaintiff, Kend v. Chroma-Glo, Inc., 51 F.R.D. 547 (D.Minn.1970), aff'd 478 F.2d 198 (8th Cir. 1973); Marklin v. Drew Properties Corp., 280 F.Supp. 176 (S.D.N.Y.1967); Hydromar Corp. v. Construction Aggregates Corp., 32 A.D.2d 794, 300 N.Y.S.2d 797 (1st Dep't 1969). Defendant asserts that the order of attachment should be vacated as unnecessary to plaintiff's security because defendant

has made an appearance in this action. But the appearance of a non-resident defendant does not require that the attachment be vacated, Gitlin v. Stone, 262 F. Supp. 500, 501 (S.D.N.Y.1967).

█ To support its contention that the order of attachment is unnecessary, defendant includes in its motion papers the consolidated financial statement of its parent corporation, but not its own financial statement. The financial statement of the parent is insufficient to provide security to plaintiff. Defendant's refusal to supply documentary evidence of its own financial condition for the public record is attributed to the extreme competition in its field. It has offered to provide documentary evidence of its financial status solely to this court for *in camera* inspection. This offer is unsatisfactory. Defendant's financial statement would not be truly helpful to this court unless plaintiff has an opportunity to evaluate the statement and show, if circumstances warrant, why the statement fails to establish that the attachment order is unnecessary to plaintiff's security. The court concludes that defendant has failed to establish that the attachment is not necessary to plaintiff's security.

### (3) *Due Process*

Mindful of the recent decision of Sugar v. Curtis Circulation Co., 383 F.Supp. 643 (S.D.N.Y.1974), the court directed the parties to submit briefs on the question of whether the order of attachment issued in this case violated defendant's right to due process. The *Sugar* decision held that N.Y.C.P.L.R. §§ 6201(4), (5), and (8) and § 6211 violated the Due Process Clause of the Fourteenth Amendment "to the extent that a New York defendant has no meaningful opportunity to vacate an order of attachment granted *ex parte* and without prior notice." 383 F.Supp. at 650. The issue in the instant case is whether an order of attachment which conferred *quasi in rem* jurisdiction over a foreign corporation violated the Due Process Clause be-

cause it was issued *ex parte*, without prior notice or opportunity for a hearing.

An analysis of several Supreme Court decisions is helpful in resolving this issue. In Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1920), the Court held that a nonresident defendant's right to due process was not violated by a state statute which provided, *inter alia*, for issuing an order of attachment *ex parte* against the property of a nonresident defendant without notice or a hearing. The Court stated, "a property owner who absents himself from the territorial jurisdiction of a state, leaving his property within it, must be deemed ex necessitate to consent that the state may subject such property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted", 256 U.S. at 111, 41 S. Ct. at 438.

In Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), a case involving garnishment of the wages of a Wisconsin resident, Wisconsin's prejudgment garnishment procedure was held to violate procedural due process as applied to defendant; the majority opinion implied, however, that a different result might have been reached if the petitioner had been a resident of a state other than Wisconsin:

> Such summary procedure may well meet the requirements of due process in extraordinary situations. Cf. . . . Ownbey v. Morgan, 256 U.S. 94, 110–112, 41 S.Ct. 433, 437–438, 65 L.Ed. 837 . . . in the present case no situation requiring special protection to a state or creditor interest is presented by the facts. . . . Petitioner was a resident of this Wisconsin community and *in personam* jurisdiction was readily obtainable. .

395 U.S. at 339, 89 S.Ct. at 1821.

In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1962), the Court implied that one of the "extraordinary situations" which justify postponing notice and opportunity for a hearing is an "attachment necessary to secure jurisdiction in state court—clearly a most basic and important public interest. Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837." 407 U.S. at 90–91, 92 S.Ct. at 1999. *Fuentes* set forth a three pronged test to determine whether an "extraordinary situation" is present which justifies postponing notice and opportunity for a hearing, 407 U.S. at 90, 92 S.Ct. 1983. The first prong is whether seizure is "directly necessary to secure an important governmental or general public interest", 407 U.S. at 91, 92 S.Ct. at 2000. As noted above, the *Fuentes* decision stated that the need to secure jurisdiction in state court constitutes an important public interest. The second prong is whether there is "a special need for very prompt action" 407 U.S. at 91, 92 S.Ct. at 2000. N.Y.C.P.L.R. § 6201(1) serves this special need by preventing defendant from removing assets from the state and thereby making *quasi in rem* jurisdiction unavailable. In the instant case, prior notice to defendant of plaintiff's intention to seek an order of attachment would have enabled defendant to quickly eliminate the obligation which plaintiff sought to attach. The third prong is whether the person initiating the seizure is "a government official responsible for determining, under the standards of a narrowly drawn statute, that [the order of attachment] was necessary and justified in the particular instance." 407 U.S. at 91, 92 S.Ct. at 2000. Section 6201(1) complies with this requirement since orders of attachment are signed by state judges after the filing of an affidavit and such other written evidence as may be submitted showing that there is a cause of action and that a ground for issuance of the order of attachment exists. In view of the foregoing, under the *Fuentes* test the instant case involves one of the "extraordinary situations" where an order of attachment issued *ex parte* does not

violate defendant's right to due process despite the absence of notice and a hearing.

The decision of Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which upheld the validity of a Louisiana sequestration statute, does not suggest that § 6201(1) is invalid. Indeed, the decision cited approvingly Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), 416 U.S. at 613, 94 S.Ct. 1895. North Georgia Finishing, Inc. v. Di-Chem, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), which held Georgia's garnishment statute unconstitutional, is distinguishable since the need to secure *quasi in rem* jurisdiction was not at issue. Similarly, the *Sugar* decision is distinguishable from the instant case since it is expressly stated in *Sugar* that the consideration of acquiring jurisdiction over the defendants was not before the court, 383 F.Supp. at 646–47, n. 5 (S.D. N.Y.1974).

The preceding analysis leads to the conclusion that attachment of the debt owed to defendant did not deprive defendant of due process where the attachment provided *quasi in rem* jurisdiction. The fact that defendant has since made an appearance in this action does not alter this conclusion.

In view of the foregoing, the motion to vacate the order is denied, except that the amount attached is ordered reduced to $24,038.21, together with probable interest, costs and sheriff's fees and expenses. *See* Robbins v. Travelers' Ins. Co., 155 Misc. 384, 278 N.Y.S. 144 (Sup.Ct.N.Y.Co., 1934), aff'd without opinion, 242 A.D. 816, 275 N.Y.S. 645 (1st Dep't, 1934), appeal dism'd, 268 N.Y. 628, 198 N.E. 526 (1935). Settle order on ten days notice.

### B. *Motion to Transfer*

The moving party has the burden of establishing that there should be a transfer pursuant to 28 U.S.C. § 1404(a). U. S. Industries, Inc. v. Proctor & Gamble Co., 348 F.Supp. 1265 (S.D. N.Y.1972); Sinclair Oil Corp. v. Union Oil Co., 305 F.Supp. 903 (S.D.N.Y.1969), 1 Moore's Federal Practice ¶ 0.145 [5] at 1787. The moving party must show "that the convenience of the parties and the interest of justice will be better served in the other district," Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y.1958). Some of the interests to be considered were set forth, in the context of a discussion of the doctrine of *forum non conveniens*, in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L.Ed. 1055 (1947). Some of these are plaintiff's initial choice of the forum; the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and all the practical problems that make trial of a case easy, expeditious, and inexpensive. In addition to these factors, the court must consider the materiality of the matters to which the witnesses will testify.

The affidavits generally show that defendant will call as witnesses three of its officers who reside in Port Huron, Michigan, in addition to a number of witnesses from outside Michigan and New York. In addition, defendant has records in its Port Huron office which it plans to introduce into evidence at trial. There is no showing, however, that the records could not easily and inexpensively be transported to New York.

Most of the witnesses plaintiff intends to call reside in New York. Although requiring defendant's three officers to come to New York might have some adverse effect on defendant's business, the effect is likely to be no greater than that which would result to plaintiff's business by requiring plaintiff, who conducts a one man business, to attend a trial in Michigan. Plaintiff maintains his business in Great Neck, New York. Plaintiff intends to introduce into evidence records now located in New York.

The court concludes that material witnesses and records are about equally available in the two forums. More precisely, plaintiff's records and material witnesses are more readily available in New York, whereas defendant's records and material witnesses are more readily available in Michigan. Consideration of the interests noted above leads to the conclusion that trial is likely to proceed as expeditiously in one proposed forum as the other. 28 U.S.C. § 1404(a) "provides for a transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In view of movant's failure to show that the Eastern District of Michigan would be a more convenient forum than the Eastern District of New York, the motion to transfer must be denied.

So ordered.