Arnold L. Fein, J.
Motion by defendants to reargue that portion of their prior motion which sought vacatur of the order of attachment in this action, which was denied by order dated June 27, 1974, is deemed a motion for renewal and is granted. Upon reconsideration, the court adheres to its original determination sustaining the order of attachment.
Plaintiffs, as trustees of welfare and pension funds, sue to recover for the fraud of defendants in breach of collective bargaining and trust agreements which required defendants to make payments or contributions to such funds to provide benefits to employees based upon the number of employee hours worked. Periodic reports were to be submitted detáiling employee hours and the amount due. Payments were to be made to the funds pursuant to the reports, subject to a later audit. Plaintiffs allege the deliberate submission of false reports, causing the funds to become substantially underpaid, as disclosed by an audit which revealed the existence of a double set of bookkeeping records at least as to one of the companies.
The prior decision (NYLJ, July 9, 1974, p 11, col 7), declined to hold CPLR article 62, the attachment article, unconstitutional to the extent that it permits attachment without prior notice in an action to recover a money judgment on the grounds of fraud and deceit. In reliance upon Mitchell v Grant Co. (416 US 600), it was held that the New York attachment statute affords sufficient safeguards in that it permits an immediate test of the validity of the attachment by motion to vacate, constituting an adversary hearing where the facts are challenged or are in dispute.
The decision noted the important governmental and general public interest in honestly financing and properly maintaining employee welfare and pension trust funds, designed for the protection of employees and as a form of deferred compensation. An employer’s failure to make employee welfare and pension contributions is made criminal (Labor Law, § 198-c), and personal liability is imposed on the 10 largest shareholders of corporations which fail to make such contributions (Business Corporation Law, § 630). There also exists a certain *508 priority in insolvency proceedings for claims involving welfare and pension contributions (Debtor and Creditor Law, § 22).
Defendants’ motion for reargument is premised upon the authority of Sugar v Curtis Circulation Co. (383 F Supp 643), decided almost four months after the prior decision. That case held that the New York attachment statute, in particular, CPLR 6201 (subds 4, 5 and 8), and CPLR 6211, was unconstitutional to the extent that the challenged provisions collectively permit attachment merely upon plaintiffs ex parte allegation that defendant had defrauded him. The court stated (p 650): "a New York defendant has no meaningful opportunity to vacate an order of attachment granted ex parte and without prior notice”.
With all due respect to the Sugar court, this court adheres to the prior determination that upon the facts and circumstances of this case, the New York attachment statute meets the requisites of procedural due process laid down in Mitchell. The decision of the Sugar court, albeit a three-Judge Federal court, is not controlling, although it is entitled to serious consideration. (8 NY Jur, Constitutional Law, § 45; Ann., 147 ALR 857; Zurich Gen. Acc. & Liab. Ins. Co. v Lackawanna Steel Co., 164 Misc 498, aifd 254 App Div 839, revd 279 NY 495, revd 307 US 265, rehearing den 307 US 650 and 308 US 631.)
State court decisions subsequently rendered have upheld the constitutionality of the attachment statute, despite the Sugar decision (Marshall, Bratter, Greene, Allison & Tucker v Knight, NYLJ, Dec. 20, 1974, p 2, col 3; Salerno v Salerno, NYLJ, Jan. 24, 1975, p 18, col 2; Boston Old Colony Ins. Co. v Bianchi, NYLJ, Feb. 26, 1975, p 16, col 1; New York Auction Co. v Belt, 81 Misc 2d 1032; also, see, McLaughlin, New York Trial Practice, NYLJ, Nov. 8, 1974, p 1, cols 1 and 2).
The Federal court has stayed its decision in Sugar pending an appeal to the Supreme Court of the United States. Upon review, it appears that the principles stated in Mitchell do not warrant the extremely broad Sugar holding. The New York attachment statute, in its protective features, appears closer in form and substance to the statute upheld in Mitchell than to those declared invalid in Fuentes v Shevin (407 US 67). "[T]he narrow door of constitutionality left open in Mitchell”, to adopt the phrase employed by the district court in Sugar, is sufficiently ajar to permit the New York statute to "squeeze through” as comfortably as did the Louisiana statute upheld *509 in Mitchell. (Sugar v Curtis Circulation Co., 383 F Supp 643, 647.)
Fuentes held unconstitutional Florida and Pennsylvania replevin statutes which permitted a secured installment seller to repossess goods which had been sold, without notice or hearing and without judicial order or supervision, upon a mere writ of replevin issued by the court clerk. There was no requirement of a convincing showing before seizure. All that was necessary was the bare assertion of entitlement by the party seeking the writ. There was no opportunity for an immediate hearing until trial of the court action for repossession. The court held the seizure violative of due process standards, since it was carried out without notice or opportunity for hearing and without judicial supervision.
Although, in sustaining the Louisiana sequestration statute, Mitchell departed from some of the broad pronouncements in Fuentes, the Mitchell court carefully noted that the Louisiana statute was substantially different from the Florida and Pennsylvania provisions invalidated in Fuentes: (1) the sequestration order could be issued only where the grounds relied upon clearly appeared from the affidavit or petition submitted in support of the writ; (2) judicial approval of the writ of attachment was required; (3) there was judicial control of the process from beginning to end; (4) the attaching creditor was obligated to post a bond; (5) the debtor (defendant) had the right to regain possession of the property, or extinguish the attachment, by posting a bond; (6) the statute entitled defendant (debtor) to seek dissolution of the writ immediately to be granted unless the “creditor proves the grounds upon which the writ issued”, and “failing which the court may order return of the property and assess damages in favor of the debtor, including attorneys fees.”
The three-Judge court in Sugar, observing that the New York attachment statute is strikingly similar to the Louisiana sequestration statute in all respects but one, invalidated the New York statute on the ground that it does not guarantee defendant an opportunity for an immediate post-seizure hearing, at which the plaintiff must prove the grounds upon which the writ was issued. The court asserted that the sole basis for vacating an attachment under the CPLR is that the attachment is unnecessary to the security of the plaintiff. Such an interpretation, however, misconstrues the statute. A motion to vacate under CPLR 6223 on the ground that the attachment is *510 unnecessary to the security of the plaintiff is but one of several available bases. Vacatur may be premised on the grounds, among others, that the attachment is unauthorized in the action, or that the ground for attachment relied upon is insufficient. There does exist an opportunity for an immediate post-seizure hearing. Defendant, at any time before application of the property or debt attached to the satisfaction of a judgment, may move, on notice, for an order vacating or modifying the order of attachment. As observed in this court’s original decision, where the facts are challenged upon such a motion, an appropriate hearing may be ordered.
Thus viewed, the only difference between the Louisiana and New York statutes is that the New York statute, unlike Louisiana, does not state that, upon a motion by defendant to dissolve the writ, the attachment is to be vacated unless plaintiff proves the grounds upon which the writ was issued. Sugar, citing New York authorities holding that defendant has the burden of proof upon such a motion, concludes that this difference between New York and Louisiana is of constitutional significance. That due process is necessarily violated by imposing the burden of proof on a defendant is not nearly as clear as Sugar suggests. (Leland v Oregon, 343 US 790; United States v Illinois Cent. R. R. Co., 291 US 457.)
Moreover, the New York authorities are not so definitive as Sugar posits as to the burden of proof, except as to nonresident corporate defendants with only transitory assets in New York, as was the case in the most recent New York decisions cited in Sugar. (Hydromar Corp. of Del. v Construction Aggregates Corp., 32 AD2d 749; Fuller Co. v Vitro Corp. of Amen., 26 AD2d 916.)
Thus, in Stines v Hertz Corp. (22 AD2d 823, affd 16 NY2d 605) the court, in vacating an attachment, otherwise grounded, stated (p 823): "While the court is not required to decide the merits of a controversy on a motion to vacate an attachment, 'the attachment papers must contain evidence from which the court can determine that the ultimate facts alleged in the complaint can be substantiated’ (Krellberg v Gregory, 10 AD2d 824). Where the complaint and affidavits fail to establish a prima facie cause of action, or where they clearly establish that 'the plaintiff must ultimately be defeated’, the attachment must be vacated (American Reserve Ins. Co. v China Ins. Co., 297 NY 322, 325).”
And, in a case more nearly like ours, where the issue is one *511 of fraud and disposition and secretion of assets, and no question of jurisdiction is involved, it has recently been ruled, in vacating an attachment, in Macmillan, Inc. v Hafner (42 AD2d 533): "At best, respondent presented but a scintilla of proof as to the requisite elements of the fraud cause of action alleged in the complaint. Such a perfunctory showing falls short of the requirements to support the drastic remedy of attachment.”
Even assuming that the prevailing case law imposes the burden on the defendant, such rule is neither implicit in nor directed by the New York statute and therefore should not affect its constitutionality. This is patent from this very case, where the issue is immaterial, since defendants do not challenge the facts as asserted.
As observed in the original decision, the papers in support of the attachment indicate a concession by defendants that the reports were false and that underpayments were made. A hearing under such circumstances would have no valid purpose.
In addition, it is significant that here, as in Mitchell, both parties assert a real interest to be protected, which, under the principles of Mitchell, requires an accommodation or balancing of interests in the application of due process requirements, rather than the inflexible approach taken by the three-Judge Federal court in Sugar. As the Supreme Court observed in Mitchell: "To summarize, the Louisiana system seeks to minimize the risk of error of a wrongful interim possession by the creditor. The system protects the debtor’s interest in every conceivable way, except allowing him to have the property to start with, and this is done in pursuit of what we deem an acceptable arrangement pendente lite to put the property in the possession of the party who furnishes protection against loss or damage to the other pending trial on the merits.” (Mitchell v Grant Co., 416 US 600, 618, supra.)
In fixing and applying due process standards, there is a need for flexibility in balancing the interests of plaintiff and defendant, as recently stated in another context in Matter of Sanford v Rockefeller (35 NY2d 547, 563): "The flexibility in approach to the balance to be struck in such cases can be seen in decisions of this court where we have measured the degree of essential due process to conform to the petitioner’s situation.”
Here, plaintiffs have an interest in the payments due the *512 trust funds on behalf of defendants’ employees, who also have an interest to be protected. The defendants obviously have an interest in the property attached. Moreover, as noted, there is manifestly an important governmental and general public interest in honestly financing and properly maintaining employee welfare and pension trust funds. Considering the New York procedure as a whole, it appears that, in accordance with the principles set forth in Mitchell in sustaining the Louisiana statute, "the State has reached a constitutional accommodation of the respective interests” of all parties (Mitchell v Grant Co., supra, p 610).
Of further significance is the fact that, although the attachment was based upon allegations of fraudulent conduct, there is also some evidence that defendants were about to leave the jurisdiction and that some of defendants’ property had already been sold and converted into cash. The properties attached are apparently of businesses which are no longer operating and the attachment actually amounts to no more than a lien against defendants’ real estate and possible accounts receivable. Nor has the defendants’ use and possession of the real property been interfered with. The only practical effect of the attachment is to prevent disposal or conveyance to a third party. As observed initially, these are not the kind of important interests required by the Supreme Court to be held immune from attachment prior to a hearing on notice.
Defendants are not aided by recent post-Sugar changes in the rules of the Civil Court of the City of New York (notice, Thompson, J., NYLJ, Oct. 31, 1974, p 1, cols 6-7) directing that all orders of attachment provide that plaintiff, within three days after levy, shall move on notice to the defendant, the garnishee and the Sheriff, for leave to prove the grounds upon which the order of attachment was issued. The burden of proof on such a motion is on the plaintiff, and the attachment will be deemed vacated if such a motion is not made.
In the original decision on the motion, almost four months prior to the Federal opinion in Sugar, it was suggested: "Although CPLR Article 62 does not now so provide, it may very well be appropriate, in the interests of due process, for the court to follow the practice used where an interim stay is granted in an order to show cause. The attachment order could incorporate a provision staying transfer of the property attached until an almost forthwith return day fixed in the *513 order, thus affording an immediate opportunity to be heard.” (NYLJ, July 9, 1974, p 11, col 8.)
Whatever the wisdom of such provisions which place upon plaintiff both the burden of applying to the court for relief, and the additional burden of proof therein, the central issue here is the constitutional significance and effect of the failure of our Legislature to incorporate such a provision in the statutory scheme. It must be held that the absence of such provision is not of constitutional import under the facts and circumstances of this case. Plaintiffs have affirmatively established a valid basis, without contradiction by the defendants, to uphold the ex parte issuance of the order of attachment. The possession of the property by defendants is not affected. As the facts asserted and upon which the attachment order was issued are not in dispute, there is no need for a formal hearing.