Louis I. Kaplan, J.
According to the stipulated facts submitted by the parties, the defendants are the sole stockholders of Sendor Bindery, Inc., which employed members of the plaintiff union. Pursuant to the collective bargaining agreement between them, the corporation was to make payments, calculated as a percentage of the gross earnings of employees, to the union’s welfare, pension, and special displacement benefit trust funds, which had been established by separate agreements between the parties. Having apparently run into financial difficulties, the Bindery failed to pay to the funds $36,813.51 for the period May 1 through July 19, 1973, and filed a petition in bankruptcy under chapter XI of title 11 of the United States Code on July 20. Plaintiff filed a claim for the funds, but received only $8,098.97, the remaining $28,714.54 being discharged as to Sendor Bindery, Inc., which had been authorized to continue operating the business as debtor-in-possession under section 743 of title 11 of the United States Code and which continued the employment of those employees covered by the agreement during the period for which no payments were made.
Plaintiff in this action seeks to hold the defendant stock *954 holders liable for the unpaid balance under section 630 of the Business Corporation Law, having notified them of its intention to do so within 90 days of July 20, 1973, and having commenced this action within 90 days of January 9, 1975, the date on which the chapter XI arrangements were confirmed and the debtor therefore discharged. (US Code, tit 11, § 771.) Defendants, who concede that Sendor Bindery, Inc. is the type of corporation described in subdivision (a) of section 630 of the Business Corporation Law, contend that termination of employment is a condition precedent to maintaining an action under section 630 of the Business Corporation Law, and that plaintiffs action was untimely, as it was not begun within 90 days of July 20, 1973, rather than January 9, 1975. Plaintiff claims that the 90 days run from the latter date, and that the employment of its members terminated when the corporation was appointed debtor-in-possession.
At the outset, it might be noted that, while contributions to welfare and pension funds may not qualify as "wages” for the purpose of determining the priority of claims in bankruptcy (United States v Embassy Rest, 359 US 29, 33) they do qualify as wages for section 630 purposes, and the union has standing to bring an action under the statute. (Greenberg v Corwin, 31 Misc 2d 736, 737; Corenti v Kulik, 36 Misc 2d 996, 999; Regnell v Page, 82 Misc 2d 506, 507.)
Although a debtor-in-possession is a new legal entity distinct from the debtor and is therefore a "new” employer, Shopmen’s Local Union No. 455 v Kevin Steel Prods., 519 F2d 698, 704; Brotherhood of Railway, Airline & S.S. Clerks v REA Express, 523 F2d 164, 170), since the purpose of a chapter XI bankruptcy "is designed to preserve a going business”, Kevin Steel (supra, p 703) "which might be successfully rehabilitated rather than being subjected to economically wasteful litigation”, (Matter of Mammoth Mart, 536 F2d 950, 953), the actual employment of the debtor’s workers may be continued, as it admittedly was in this case. It is not necessary to decide whether there was technically a termination of employment by the debtor, for this, while it may be significant in bankruptcy, is of no moment here, since section 630 of the Business Corporation Law does not require the termination of the employment relationship as a condition precedent to bringing an action thereunder.
The statute permits employees such as these to bring an action for "wages or salaries due and owing * * * for services *955 performed” for the corporation in which the defendants hold stock, and requires that notice be given such stockholders within 90 days "after termination of such services” (Business Corporation Law, § 630, subd [a]). The use of the word "such” indicates that the "services” referred to are those which have already been "performed”, and for which wages are "due and owing”. Thus, the prospective relationship of the employer and employee is not material, since the statute makes stockholders liable only for services which have already been completed and not for those which will be completed at some point in the future. "Termination” therefore refers to the services, not to the employment relationship.
Burns v Stento (9 NYS 2d 736), on which defendants rely, does not set forth a contrary rule, for in that case it happened that the termination of both the plaintiffs’ services and the employment relationship occurred simultaneously. Similarly, the court in Corenti (supra), distinguished between the end of the employment relationship and the earlier date that plaintiffs ceased to perform services in finding their action untimely. The services in this case were performed between May 1 and July 19, 1973. However, judging from documents in the court file which were submitted by plaintiff on a previous motion before another Justice, and nowhere controverted by defendants, payments to the funds were "due and owing” only at the end of each month. Therefore, in order to hold defendants liable for the payment due May 31, notice had to be given them by August 29; for that due June 30, by September 28; for July 31, by October 29. The parties have stipulated only that "13. The defendants herein were given notice in writing within ninety (90) days after July 20, 1973” i.e., by October 18, 1973. Since this was clearly before October 29, plaintiffs gave timely notice of their claim for the month of July. However, since the burden was on the plaintiff to prove that it complied with the statute and gave timely notice, it may not recover the payments due for May and June, 1973, since it has not shown on what dates the defendants were given notice of the union’s claim.
There remains the question of whether the action was timely commenced by the plaintiff. Subdivision (a) of section 630 of the Business Corporation Law provides that an action against stockholders "shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such servic *956 es.” This was interpreted in Murphy v Meyer (154 Misc 341, 342), to mean that an action could also be commenced where the plaintiff had exhausted his remedies in bankruptcy and it was impossible to get an unsatisfied judgment against the corporation and thereby meet the condition precedent imposed by the statute. In this case, this became impossible only upon the confirmation order, for it was only then that the debt of the corporation was discharged. (US Code, tit 11, § 771.) The fact that the plaintiff was stayed from commencing any action against the corporation once the petition was filed did not make it impossible to collect the full amount in the bankruptcy proceedings, although that was unlikely; and as long as it is theoretically possible to collect the debt from the corporation, the stockholders are not liable, for the purpose of the statute was to create an exception to the rule of limited liability only where employees could not collect their wages because of the insolvency of the corporation. Consequently, since it is stipulated that plaintiff commenced this action within 90 days of the confirmation order, the action is timely. Plaintiff may therefore recover that portion of the July, 1973, payment which it could not collect from the corporation in the bankruptcy proceedings.