PORT CITY CONSTRUCTION COMPANY *v.* ADAMS & DOUGLASS, INC.

[No. 231, September Term, 1970.]

*Decided February 3, 1971.*

586

The cause was argued before HAMMOND, C. J., and MC-
WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*A. David Gomborov,* with whom were *Sidney Schlach-
man* and *Gomborov, Steinberg, Schlachman & Harris* on
the brief, for appellant.

*Charles S. Iversen* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The parties had at one another below over a mechanics'
lien filed in the Circuit Court for Prince George's County
by the appellee, a subcontractor. The appellant, the gen-

eral contractor, bonded the lien claim and filed a petition to strike the lien grounded on the claim that in the written construction subcontract between them the appellee expressly waived the right to file a lien. The appellee answered the petition asserting:

> "That the language of Paragraph 16 of the agreement referred to in the Petition as Exhibit 'A' is not intended to constitute a waiver of the right of respondent to file a mechanic's lien in this case, and such a waiver is against public policy."

Appellee also filed a "counterclaim" against appellant for $13,544.00, the amount claimed to be due and unpaid for work performed (and the amount claimed in the lien proceeding). Judge Bowie held that the right to file a lien had not been waived and dismissed the petition, and that "the counterclaim substantially duplicates the lien claim and that the counterclaim should therefore be stricken." We reverse both orders.

It is clear that there is no public policy against the waiver of the right to file a mechanics' lien (including a waiver to a prime contractor by a subcontractor) and that the law of Maryland contemplates with approval that there will be waivers.

The legislature supplemented the existing lien law in 1845—Ch. 287, § 5, of the Laws of that year, now Code, Art. 63, § 3—to provide "[t]hat no person having a lien * * * shall be considered as waiving such lien by granting a credit or receiving notes or other securities, unless the same be received as payment, or the said lien be expressly waived * * *. Thereafter, in various cases the Court of Appeals found and gave effect to an express waiver of the lien. See *Willison v. Douglas,* 66 Md. 99; *Pinning v. Skipper,* 71 Md. 347; *Goldman v. Brinton,* 90 Md. 259; and compare *Maryland Brick Co. v. Spilman,* 76 Md. 337, and *Dickerson Lumber Co. v. Herson,* 230 Md. 487, 492. See also "The Maryland Mechanics' Lien Law—Its Scope and Effect," 28 Md. L. Rev. 225, under

the subtitle "Waiver" at 233-235; the Annotation: "Mechanic's Lien—Provision Against, 76 A.L.R.2d 1087, 1110; and 53 Am.Jur.2d *Mechanics' Liens* §§ 290 and 334.

The real contention is as to the effect of the waiver sentence in the subcontract between appellant and appellee. The subcontract recites that appellant has entered into a prime contract with the named owner for construction work at a named site and that appellee "shall perform the work, namely in the following portions of the Prime Contract: All clearing, site preparation, demolition, excavating, grading, off site borrow," (and so forth, in detail) for which appellant would pay $82,500. Other paragraphs supplied directions and agreements as to the work and the course and manner of payments, including Provision II (b), an agreement that:

> "No progress payment or other payment hereunder shall become due and payable to Subcontractor unless (if Contractor shall so request) Subcontractor shall furnish (A) a sworn itemized statement of his costs to the end of the period covered by his requisitions, supported by bills and vouchers, (B) a copy of the payrolls covering all labor furnished in the execution of the work to the end of the period covered by his requisitions, together with a sworn certificate that such payrolls are correct and that the wages therein shown have been paid, (C) receipted bills showing payment for all materials and equipment and subcontracts utilized or performed in the execution of the work to the end of the period covered by his requisitions, or, in lieu thereof, duly executed releases of Owner, Contractor and Contractor's payment bond, if any, and or waivers of lien from each of the materialmen, equipment suppliers and subcontractors of Subcontractor covering such materials, equipment and subcontracts, and (D) Subcontractor's duly executed releases of Owner, Con-

tractor and Contractor's payment bond, if any, and or a waiver of lien by Subcontractor with respect to all of the work performed to the end of the period covered by his requisitions."

Paragraph VII of the subcontract provided: "This Subcontract is subject to and includes the terms and conditions set forth on the other side of this page."

The "terms and conditions" were spelled out in eighteen numbered paragraphs, some subdivided, covering a variety of matters, such as (1) permitting payment to the subcontractor without impairing certain rights of the contractor, (2) prohibiting the employment of workers objectionable to the contractor, (3) the risk of the work, and the risk of the performance of the work and the remedy of the contractor in regard thereto, (4) items the contractor considered to have induced him to enter into the contract, (10) the subcontractor's responsibility for hinderance, delay or damage resulting from the manner in which he executes the work, (11) requiring the subcontractor, upon request, to furnish surety bonds to insure performance, (12) requiring the subcontractor to pay certain taxes, (13) prohibiting the delegation of the work, (15) obliging diligent prosecution of the work, and (16) the crucial paragraph, which deals with liens and the procedures to be employed to protect the contractor and the owner from liens. Paragraph 16 reads as follows:

"In the event that at any time any items of indebtedness incurred by Subcontractor in the performance of the work are unpaid, whether due or to become due, Contractor is authorized to make such payment directly to those to whom such indebtedness is payable, out of any moneys payable to Subcontractor. *Subcontractor hereby expressly waives the right to file any lien or claim against the property of the Owner or Contractor or Contractor's payment bond, if any, or against money due Contractor under the Prime Contract.* If at any time there shall be any lien

or other claim for moneys due or to become due for which, if established, Contractor might be liable, and which would be chargeable to Subcontractor, Contractor shall have the right to bond said lien or otherwise discharge the indebtedness and/or to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify Contractor against such lien or other claim with interest, together with the expense incident to discharging such lien or other claim, including any premiums charged for a bond and any attorney's fees and disbursements, all of which Subcontractor agrees to pay. Should Contractor give Subcontractor notice of any unpaid claim against the latter in connection with the work, Subcontractor shall be estopped from disputing liability for any such claim unless within three (3) days after such notice he indicates to Contractor in writing by registered mail that there is some sum different from that demanded owing or that there are no sums owing. And should there prove to be any claim after all payments are made, Subcontractor shall refund to Contractor all moneys that latter may be compelled to pay in discharging and defending the same. Any lien or other claim, until satisfied or withdrawn, shall preclude any and all claims or demands for any payment whatever under or by virtue of this Subcontract." (Emphasis added.)

The subcontractor urges that to be effective a waiver must be clear and unambiguous, that the contract must be read as a whole in construing the waiver language, that such a reading produces ambiguity and doubt as to the breadth and extent of the waiver which must be resolved against the contractor who drew the contract. More specifically, the argument is that the waiver sentence in paragraph 16 was intended, as the context in which it is

found makes plain, to preclude the subcontractor from filing a lien only if it is indebted to others who are entitled to and might make such a claim against the property.

There can be no quarrel with the appellee's generalizations on rules and canons of construction but we find that here there is no need to invoke them. The sentence in paragraph 16 that "Subcontractor hereby expressly waives the right to file any lien or claim against the property of the Owner or Contractor or Contractor's payment bond, if any, or against money due Contractor under the Prime Contractor," is plain, clear and unambiguous.

The use of the word "hereby" indicates that the waiver is made by the single sentence which contains the word "waives". The waiver is expressly as to "any lien" and the use of the word "any" would seem to leave no room for limiting the waiver to cases wherein the subcontractor owed money to potential lien claimants. In *Latrobe v. Comptroller*, 232 Md. 64, 70, we said in discussing a statute granting refunds of taxes paid in error:

> "Sec. 215 in terms applies to 'any' special tax without regard to the statute imposing it (and as the Supreme Court said of the word 'all' in a tax statute in *Baltimore National Bank v. State Tax Commission*, 297 U.S. 209, 212, 215, 80 L. Ed. 586, the word 'any' is an 'uncompromising' one)."

See also *Greenberg v. Dunn*, 245 Md. 651, 657, wherein we said:

> "The word 'all' leaves little, if any, room for exceptions as we have noted in *Spruell v. Blythe*, 215 Md. 117, 124, and *Food Fair Stores, Inc. v. Raynor*, 220 Md. 501, 512, wherein we adverted to the view of Justice Cardozo, speaking for the [Supreme] Court in *Baltimore National Bank v. State Tax Commisison*, 297 U.S. 209, 212, 80 L. Ed. 586, 589, when he said: '* * * the burden

is heavily on the suitor who would subject the word 'all' with its uncompromising generality to an unexpressed exception.' "

We see nothing in the context in which the waiver sentence is found to require or indicate that the sentence has a restricted meaning or effect. The first sentence of paragraph 16 is an authorization for the contractor to bypass the subcontractor and pay the subcontractor's debts, needed because the waiver of the subcontractor would not prevent his material man or subcontractor from filing a lien. The second sentence is the waiver agreement. The third deals with the right of the contractor to bond or discharge a lien asserted or established by one other than the subcontractor. The fourth sentence sets up a procedure by which the contractor may estop the subcontractor. The fifth gives a right of refund from the subcontractor to the contractor in certain circumstances. The last sentence provides that the existence of a lien precludes a demand for payment.

The waiver sentence fits logically in paragraph 16, which is designed to prevent or deal with the filing of a lien by anybody who had dealt with the subcontractor. It prevents the subcontractor from filing *any* lien and provides ways for the contractor to handle liens or potential liens that might be filed by others who would not be controlled by the subcontractor's waiver.

We see no inconsistency or repugnancy between the waiver in paragraph 16 and the language of Provision II (b) in the subcontract quoted earlier as to furnishing the contractor waivers of lien if the contractor so requests. Its purposes seem obvious. The first is to enable the owner to police the disbursement of the construction progress payments and the second is to satisfy the lending institutions who are providing the payments. Progress payments are disbursements by the contractor of monies usually received periodically from institutions who have lent construction money to the owner. The lender's collateral usually is the progress towards completion

of the building prior to the time when permanent financing will become available. We noted the usual arrangement in *Dickerson Lumber Co. v. Herson*, 230 Md. 487, 493, when we said: "the schedule of progress payments * * * [was] synchronized with disbursements under the construction loan agreement." The lenders want periodic assurance that their funds have become and will become brick and stone collateral that is free of adverse liens, and they are accustomed to receive that assurance in part in the form of the writings referred to in Provision II (b), including periodic waivers of liens, and not in the form of a general pre-waiver. Significant also is the fact that not only was the subcontractor to give its own periodic waiver—which would be no more than a reaffirmation of its prior general waiver—but it was also to procure and submit periodic waivers from its "materialmen, equipment suppliers and subcontractors."

Although he has lost his lien, the subcontractor can sue the contractor at law for money due him. Code, Art. 63, § 33, provides:

> "Nothing contained in this article shall be construed to affect the right of any person to whom any debt may be due for work done or materials furnished to maintain any personal action against the owner of the building or any other person liable therefor."

Upon remand, the Circuit Court will enter an order striking the lien, and under Maryland Rule 515 transfer the "Counterclaim" to the law side for pleading by the contractor and eventual trial.

> *Orders reversed, and case remanded for further proceedings, costs to be paid by appellee.*