GERARD C. WALLACE CO., INC. *v.* THE SIMPSON
LAND COMPANY

[No. 138, September Term, 1972.]

*Decided January 15, 1973.*

The cause was argued before MURPHY, C. J., and MCWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Sebert H. Keiffer,* with whom was *Joseph F. Vallario, Jr.,* on the brief, for appellant.

*Bennett Crain, Jr.,* with whom were *Hartman & Crain* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is but another skirmish in the continuing battle between subcontractors, general contractors, and owners.

While the relationship between them may perhaps be clouded, it is clear that sometime in May 1967, The Simpson Land Company (Simpson) as owner, and News Construction Co., Inc. (News) as contractor, commenced construction of a Holiday Inn Motel at Parole, Maryland.[1] In June 1967, John A. Simpson, president of Simpson and Leopold B. Boeckl, president of News seem to have persuaded Gerard C. Wallace, president of Gerard C. Wallace Co., Inc. (the Wallace Company) to undertake the performance of the plumbing subcontract on the

---

1. The appellant contends Simpson and News were joint venturers; Simpson, that the relationship was that of owner and general contractor. The appellant complains because the trial court made no findings as regards this and other facts. We note that no motion for a statement of grounds for the court's decision was made under Rule 18 c. We have reviewed the testimony and find that the facts alleged to be in dispute were not germane to the issue before the trial court.

project on the condition that 80% of the subcontract price would be paid upon completion, the remaining 20% to be evidenced by a six-months promissory note, which would be paid from rentals, a proposal made necessary by Simpson's cash position. The Wallace Company would further agree to execute a release of lien when the 80% had been paid and a note for the remaining 20% delivered. Except that there was no reference to the source of funds for payment of the note, all of this was ultimately incorporated in the subcontract between News and the Wallace Company. It is the last provision which is the crux of this controversy.

The Wallace Company performed its subcontract, signed a release of lien; received payment of 80% of the contract price, and News' note for $26,000.00, the remaining 20% of the contract price. When no payments in reduction of the note were received within 90 days of the completion of the work, the Wallace Company gave timely notice of its intention to assert a lien, and later filed its claim.[2] When six months had passed without payment, the Wallace Company filed a bill in equity in the Circuit Court for Anne Arundel County for the sale of the property to satisfy its lien. We were told at argument that News by this time had become insolvent. From an order dismissing the bill of complaint, the Wallace Company has appealed.

The Wallace Company advances a many-faceted argument in support of its position that it should have prevailed. In essence, however, its contention is that an owner cannot rely on a release of lien given for the sole purpose of permitting the owner to withdraw the balance of a loan commitment from a construction lender, and further, that the release of lien was not supported by consideration.

Unfortunately for the Wallace Company, we agree with what must have been the chancellor's conclusion: that

---

2. Maryland Code (1957, 1972 Repl. Vol.) Art. 63, § 11 (a) requires that notice be given the owner within 90 days; § 23, that the lien must be claimed within six months of the completion of the work.

this contention simply finds no support in the facts. The subcontract between News and the Wallace Company dated 21 June 1967 provided that the Wallace Company would perform the plumbing, heating, air conditioning and ventilation work for a base price of $130,000.00, and then provided:

> "Twenty per-cent of this contract to be withheld for six (6) months after completion. After 80% of the contract is paid, release of liens are to be executed.

> "Contractor to sign a promissory note for the remaining 20% of the contract price for a period of six (6) months from date of completion.

> "Contract price to be $130,000.00. In the event subcontractor does not make 15% Overhead and profit, the contract price to be increased to a maximum of $132,000.00."

It is undisputed that the Wallace Company had received $105,890.34 from News by 22 March 1968, and accepted News' note dated 7 June 1968, due six months from date, for $26,000.00 with interest at six per cent. On 15 February 1968, when all but $3,850.00 of the $105,890.34 had been paid, the Wallace Company executed a waiver of lien, which provided, in pertinent part:

> *"TO ALL WHOM IT MAY CONCERN:*
> \* \* \*

> *"NOW, THEREFORE, KNOW YE,* That we [Gerard C. Wallace Company] the undersigned for and in consideration of the sum of One Dollar and other good and valuable considerations, the receipt whereof is hereby acknowledged, do hereby waive and release any and all lien, or claim or right to lien on said above described building and premises [Holiday Inn Motel, Parole, Maryland] under the Statutes of the

> State of Maryland relating to Mechanics' Liens, on account of labor or materials, or both, furnished or which may be furnished, by the undersigned to or on account of the said contract for said building or premises."

This language is clear and unambiguous—the right to claim a lien was unequivocally waived.

What nettles the Wallace Company is that Simpson did not experience the cash shortage which it had anticipated; was able to pay News the full contract price of $624,000.00, either in cash or by joining in notes aggregating $15,967.33 given by News to cover balances owed certain subcontractors. That it did not join in the note given the Wallace Company is explained by the fact that the Wallace Company's name did not appear on a list given Simpson by News. There being no privity between Simpson and the Wallace Company, Simpson was under no legal obligation to do anything, *Bounds v. Nuttle,* 181 Md. 400, 405, 30 A. 2d 263 (1943).

If the Wallace Company intended that the release of lien was to operate only in favor of the mortgage lender, it should have said so. In *Perper v. Fayed,* 247 Md. 639, 641, 234 A. 2d 144 (1967), the language of the waiver was

> ". . . I do hereby waive, release and quit-claim in favor of each and every party making a loan on said real estate . . . all right that I may now or hereafter have to a lien upon the land and improvements. . . ."

We held that the subcontractor had waived only its priority and not its right to file and enforce a lien.

Instead of following *Fayed's* language, the Wallace Company chose to execute a general release, unqualified in its terms. Consideration is found in the provisions of the contract itself, *Cf. Sodini v. Winter,* 32 Md. 130 (1870).

It seems to us that this case is controlled by *Port City Construction Corp. v. Adams & Douglass, Inc.,* 260 Md. 585, 587, 273 A. 2d 121 (1971). There, speaking through Chief Judge Hammond, we flatly held,

> "It is clear that there is no public policy against the waiver of the right to file a mechanics' lien (including a waiver to a prime contractor by a subcontractor) and that the law of Maryland contemplates with approval that there will be waivers."

*Order affirmed, costs to be paid by appellant.*