## BARRY PROPERTIES, INC. *v.* THE FICK BROS. ROOFING COMPANY

[No. 62, September Term, 1975.]

*Decided February 10, 1976.*

16

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Mark D. Dopkin* and *Charles B. Heyman,* with whom were *Gary E. Klausner* and *Kaplan, Heyman, Engelman & Belgrad* on the brief, for appellant.

*Amicus Curiae* brief filed by The Mechanical Contractors' Association of Maryland, Inc. and Associated Organizations, *Howard H. Conaway, George W. Liebmann* and *Frank, Bernstein, Conaway & Goldman* on the brief.

*Joseph I. Huesman,* with whom were *Lerch & Huesman* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 39 *infra.*

This nation's first mechanics' lien law was enacted by the Maryland General Assembly 185 years ago. Laws of Maryland 1791, ch. 45, § 10. The statute, which may well have been drafted by Maryland's venerable Thomas Johnson,[1] applied only to that section of the State which was being ceded to the United States to constitute the District of Columbia, and was passed by the Legislature, at the urging of Thomas Jefferson and James Madison, to facilitate the speedy construction of the new capital city of Washington. Although other states quickly followed this lead by enacting similar laws, it was not until 47 years later that such a

---

1. Thomas Johnson, a preeminent Maryland lawyer, was one of the Commissioners appointed by President George Washington to establish the new seat of government. In addition, he served as the first Governor of Maryland after Independence, a delegate to the Continental Congress, a member of the Convention of Maryland which ratified the Federal Constitution and, from 1791 to 1793, an Associate Justice of the United States Supreme Court. *See W. Tindall, Standard History of the City of Washington* 47-49 (1914); *Maryland Manual 1973-1974,* 812, 839-41, 859 (1974).

statute, Laws of Maryland 1838, ch. 205, was adopted for any other portion of Maryland, and even that act applied only in Baltimore City. *See Frederick Contr. v. Bel Pre Med.*, 274 Md. 307, 313, 334 A. 2d 526 (1975); *Freeform Pools v. Strawbridge*, 228 Md. 297, 302 n. 1, 179 A. 2d 683 (1962); *Welch v. Humphrey*, 200 Md. 410, 415, 90 A. 2d 686 (1952); *H. Farnam, Chapters in the History of Social Legislation in the United States to 1860*, 153-56 (1935); *W. Tindall, Standard History of the City of Washington* 47-49 (1914). *See generally* Cutler & Shapiro, *The Maryland Mechanics' Lien Law — Its Scope and Effect*, 28 Md. L. Rev. 225 (1968).[2] Our current mechanics' lien law, Maryland Code (1974, 1975 Cum. Supp.), Real Property Article, §§ 9-101 to -111, which is applicable throughout the State, is a lineal descendant of the 1838 statute. The question with which we are confronted in this case is whether Maryland's present mechanics' lien law is compatible with the due process clauses of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution. Although we conclude that parts of the statute do not comport with contemporary concepts of due process, we find it unnecessary to strike down the entire act since its provisions are severable.

Generally speaking, mechanics' lien statutes, in an endeavor to provide for the public welfare, are designed to encourage construction by ensuring that those who contribute to a project are compensated for their efforts. Maryland's law, in furtherance of this purpose, grants to those who have supplied labor or materials to the creation, erection, improvement or repair of specified property (principally buildings) a lien, enforceable by foreclosure, on the structure and the immediately adjacent land. *See* §§ 9-101, -102, -105, -106, -111; Maryland Rules BG70, 71, 73, 74, 76.

Although this Court has considered a multitude of mechanics' lien cases since the law's original enactment in

---

**2.** An excellent detailed history of mechanics' liens in Maryland is set out in the amici curiae brief filed in this case.

1838, we have never before been faced with a procedural due process challenge to the validity of the entire statute. The basis of the present attack — that the imposition of a lien without notice and an opportunity for a prior hearing, as the Maryland statute authorizes, deprives the owner of his property without procedural due process — emanates from a quartet of recent Supreme Court decisions which address the question of whether certain statutory prejudgment creditor remedies are consonant with the due process clause of the Fourteenth Amendment. In the order they were decided, those cases are: *Sniadach v. Family Finance Corp.*, 395 U. S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages); *Fuentes v. Shevin*, 407 U. S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin of personalty); *Mitchell v. W. T. Grant Co.*, 416 U. S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration of personalty pursuant to vendor's lien); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U. S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment of bank account).[3] Before discussing whether Maryland's mechanics' lien law satisfies the requirements of due process as interpreted in those four decisions, we will more fully describe the statute and set forth the facts of this case.

Under the terms of the Maryland statute, a lien is created and attaches to the property as soon as work is performed or materials are supplied, § 9-101 (a), and lasts until "the expiration of 180 days after the work has been finished or the materials furnished, although no claim has been filed for them [with the clerk of the court]." § 9-105; *see Treusch v. Shryock*, 51 Md. 162, 169-70, 173 (1879); *Sodini v. Winter*, 32 Md. 130, 133 (1870); *Franklin Ins. Co. v. Coates*, 14 Md. 285, 296-97 (1859). However, if a laborer or materialman is a subcontractor, meaning he did not directly contract with the property owner, he "is not entitled to a lien unless, within 90

_____

**3.** Currently pending before the United States Supreme Court is a decision holding that the sections of New York's attachment statute which permit ex parte prejudgment attachments of property are unconstitutional. Sugar v. Curtis Circulation Co., 383 F. Supp. 643 (S.D.N.Y. 1974) (three-judge court), *probable jurisdiction noted*, 421 U. S. 908 (1975) (Nos. 74-858, 74-859).

days after furnishing the work or material, he or his agent gives notice in writing, . . . to the owner . . . of his intention to claim a lien." § 9-103 (a); *see Palmer Park Ltd. v. Marvelite, Inc.,* 255 Md. 121, 125-30, 257 A. 2d 169 (1969); *Himelfarb v. B & M Weld. & Iron Wks.,* 254 Md. 37, 41-42, 253 A. 2d 842 (1969); § 9-103 (b)-(d). The purpose of this § 9-103 (a) notice is to inform the property owner that a lien may be claimed so that he, as authorized by § 9-104, "may retain from the cost of the building the amount which he ascertains to be due to the party giving notice." The statute further provides that if either a subcontractor (who gives the § 9-103 (a) notice) or a general contractor has not been fully paid and desires to retain his mechanics' lien, he must within the 180 days prescribed by § 9-105 (e), file a claim containing specified information concerning the claim, § 9-105 (c), with the clerk of the circuit court of the county where the property is located, at which time the lien will be recorded on a special "Mechanics' Lien Docket." § 9-105. Once filed with the clerk the lien subsists for one year from the date of its filing unless within that period the claimant commences a proceeding to enforce it, in which case the lien is "stayed until the conclusion of the proceeding." § 9-106. During that one-year period, however, "the owner of the property subject to the lien, or any other person interested in it, may bring proceedings in equity to compel the claimant to prove the validity of the lien or have it declared void," *id.*; *see Continental Steel Corp. v. Sugarman,* 266 Md. 541, 548, 295 A. 2d 493 (1972); Rule BG75 a: or, with court approval, the owner may release his property from the lien by substituting a bond.[4] Rule BG75 b. An action to enforce a mechanics' lien that has been recorded is an in rem equity proceeding of which all interested parties are entitled to notice as in other equity actions. *See Grinnell Co. v. City of Crisfield,* 264 Md. 552, 561, 287 A. 2d 486 (1972); Rule BG71 a. If in such a proceeding the claimant establishes that he is

---

4. If the lien has been paid the claimant, at the request of any interested party, must file an order of satisfaction and if he fails to do so, the court may discharge the lien and award the owner a reasonable attorney's fee and costs. Maryland Rule BG75 c.

entitled to the lien, the court will order a sale of the property to pay the claimant unless the amount found to be due is paid on or before a specified date. Rule BG73. Having summarized Maryland's mechanics' lien statute, we now, relying substantially on the parties' stipulations, sketch the facts of this case.

On June 6, 1973, Associated Engineers, Inc., and the appellant, Barry Properties, Inc., signed a contract providing that Associated, as a general contractor, was to erect a building on a tract of land located in the Owings Mills Industrial Park in Baltimore County, owned by Barry. At some point thereafter, the appellee, Fick Bros. Roofing Co., subcontracted with Associated, agreeing to construct, using materials it was to supply, the building's roof. The appellee fully and satisfactorily performed its contractual obligations and was owed $11,610 by Associated. The parties agree that Fick's notice of intent to claim a mechanics' lien, filing of the mechanics' lien claim and bill of complaint to enforce that lien complied in all respects with the applicable Maryland statutes and rules of procedure. To the extent pertinent here, Barry responded by moving for summary judgment on the ground that the lien statute unconstitutionally deprived it of its property without procedural due process of law. For the purposes of the motion for summary judgment, the parties further stipulated that Fick's lien kept Barry from being paid the balance of its construction mortgage (the construction lender withheld payment pending resolution of this and other mechanics' lien claims) and prevented Barry from either closing a permanent mortgage or obtaining a second mortgage on the property's equity. After a hearing, the Circuit Court for Baltimore County (Haile, J.) concluded that there was no denial of due process; the court then determined that the lien claim was valid to the extent of $11,610, and appointed a trustee to sell the property if the lien was not paid within 30 days. Barry appealed,[5] and we granted certiorari while the case was pending in the Court of

---

5. This was an appealable order under Code (1974, 1975 Cum. Supp.), Courts and Judicial Proceedings Article, § 12-303 (c) (5).

Special Appeals. Code (1974, 1975 Cum. Supp.), Courts and Judicial Proceedings Article, § 12-201.

While agreeing with all we have thus far related in this opinion, the appellant nevertheless urges that Maryland's mechanics' lien law, as it currently exists, deprives owners of their property without procedural due process in contravention of Article 23 of the Maryland Declaration of Rights and of the Fourteenth Amendment of the United States Constitution. With respect to this issue, we initially observe that it has long been settled by the decisions of this Court that "these constitutional provisions have the same meaning and effect in reference to an exaction of property, and that the decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities [as to the proper interpretation of Article 23]." *Bureau of Mines v. George's Creek*, 272 Md. 143, 156, 321 A. 2d 748 (1974); *Allied American Co. v. Comm'r*, 219 Md. 607, 615-16, 150 A. 2d 421 (1959); *Goldsmith v. Mead Johnson & Co.*, 176 Md. 682, 686-87, 7 A. 2d 176 (1939).

Preliminarily, before determining if Maryland's mechanics' lien statute meets the requirements of due process, we must ascertain whether two prerequisites to the applicability of these constitutional provisions exist. First, we note, in order for the due process clauses of Article 23 and the Fourteenth Amendment to apply there must be "state action." *See Jackson v. Metropolitan Edison Co.*, 419 U. S. 345, 349-50, 95 S. Ct. 449, 453, 42 L.Ed.2d 477 (1974). We think it clear that mechanics' liens involve state action since they are created, regulated and enforced by the State. *See Caesar v. Kiser*, 387 F. Supp. 645, 647-48 (M.D. N.C. 1975); *Connolly Development, Inc. v. Superior Court*, 116 Cal. Rptr. 191, 194-95 (Ct. App. 5th Dist. 1974) (appeal pending before Supreme Court of California). It appears that the Supreme Court would agree considering that it has voided on due process grounds state garnishment and replevin statutes and in order to have done so the Court must have concluded that there was sufficient state involvement with those prejudgment creditor remedies, which were also created, regulated and enforced by the

state, to activate the protections of the Fourteenth Amendment. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U. S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975) (garnishment); *Mitchell v. W. T. Grant Co.*, 416 U. S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration under vendor's lien); *Fuentes v. Shevin*, 407 U. S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin); *Sniadach v. Family Finance Corp.*, 395 U. S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment).

The second preliminary issue is more vexing: does the imposition of a lien under the Maryland statute constitute, as it must if the due process clauses are to apply, a "significant taking of property" ? *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, *supra*, 419 U. S. at 606, 95 S. Ct. at 722, *quoting Fuentes v. Shevin*, *supra*, 407 U. S. at 86, 92 S. Ct. at 1997; *Boddie v. Connecticut*, 401 U. S. 371, 378-79, 91 S. Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Sniadach v. Family Finance Corp.*, *supra*, 395 U. S. at 342, 89 S. Ct. at 1823 (Harlan, J., concurring). Several courts, when faced with due process challenges to similar mechanics' lien laws, have concluded that, since the owner is not completely deprived of the possession and use of his property and can still, at least in theory, alienate and encumber it, "the deprivation which results from ... a mechanics' lien is de minimis" and therefore the guarantees of due process are inapplicable. *Cook v. Carlson*, 364 F. Supp. 24, 27 (D. S.D. 1973); *accord, Ruocco v. Brinker*, 380 F. Supp. 432, 436 (S.D. Fla. 1974) (dictum) (three-judge court); *Spielman-Fond, Inc. v. Hanson's, Inc.*, 379 F. Supp. 997, 999 (D. Ariz. 1973) (three-judge court) (per curiam), *aff'd*, 417 U. S. 901 (1974); *Connolly Development, Inc. v. Superior Court, supra*, 116 Cal. Rptr. at 196-98. Under §§ 9-101 and 9-105 (e) of the Maryland statute, there is a "subsisting lien" as soon as materials are supplied or work is performed, *Sodini v. Winter*, 32 Md. 130, 133 (1870); *Franklin Ins. Co. v. Coates*, 14 Md. 285, 295-97 (1859), which constitutes a cloud on the property owner's title.[6] Although possession will not be

---

6. When timely filed, the claimed lien additionally becomes an encumbrance of record.

wrested from the owner until a purchaser acquires title through a foreclosure sale and the owner can still legally alienate or further encumber the property until that time, in reality, since he no longer has unfettered title, not only will it be extremely difficult for him to do so but additionally his equity will be diminished to the extent of the lien. This is graphically demonstrated in the present case since, due to the appellee's lien, the appellant was deprived of the balance of its construction mortgage and was unable to close a permanent mortgage or to obtain a second mortgage on the property's equity. We find, moreover, no merit in the conclusion reached in *Cook v. Carlson, supra,* 364 F. Supp. at 27 and *Connolly Development, Inc. v. Superior Court, supra,* 116 Cal. Rptr. at 197, and relied on by the appellant, that the improvement's enhancement of the value of the property makes up for any decrease in the property owner's equity due to a lien since that assumes an equality of value, that the procedural prerequisites were or will be met, and that the work or materials purportedly furnished would legally entitle one to a lien. Consequently, in light of the effect a Maryland mechanics' lien has on property, we conclude that an owner is deprived of a "significant property interest" when a lien is imposed and thus, the limitations of due process are applicable.[7] The Supreme Court of Connecticut reached the same conclusion, based on similar reasoning, with respect to that state's mechanics' lien law, one not unlike our own. *Roundhouse Constr. Corp. v. Telesco Masons Supplies Co.,* Conn., A. 2d [February Term, 1975, decided April 22, 1975], *vacated and remanded,* U. S., 96 S. Ct. 20 (1975) (for determination of whether the decision was based on federal or state grounds or both), *reaffirmed,* Conn., A. 2d [decided January 27, 1976] (based on both federal and state grounds). Additionally, we mention that other courts have concluded that prejudgment attach-

---

7. It is of little consequence that we have previously held a mechanics' lien to be a "remedy" as opposed to a "vested right," Wilson v. Simon, 91 Md. 1, 9, 45 A. 1022 (1900); *see* Md. Casualty Co. v. Lacios, 121 Md. 686, 690, 89 A. 323 (1913); Evans Co. v. Internat. Trust Co., 101 Md. 210, 218, 60 A. 667 (1905), since that is a separate issue from whether the imposition of a lien deprives an owner of a significant property interest.

ments of realty deny the owner a significant property interest. *See, e.g., Bay State Harness Horse Racing and Breeding Ass'n, Inc. v. PPG Industries, Inc.,* 365 F. Supp. 1299, 1304-06 (D. Mass. 1973) (three-judge court); *Gunter v. Merchants Warren Nat'l Bank,* 360 F. Supp. 1085, 1089-90 (D. Me. 1973) (three-judge court).

Although the Supreme Court has not specifically decided what the due process clause of the Fourteenth Amendment requires with respect to mechanics' lien statutes it has had occasion to consider this constitutional provision's effect on four analogous prejudgment creditor remedies. In *Sniadach v. Family Finance Corp., supra,* 395 U. S. at 338-42, 89 S. Ct. at 1821-23, the Supreme Court voided a Wisconsin prejudgment garnishment statute which permitted, without notice or a prior hearing, a creditor to freeze the wages of an alleged debtor although the creditor had no prior interest in the wages. Under that statute, "the clerk of the court issues the summons at the request of the creditor's lawyer; and it is the latter who by serving the garnishee sets in motion the machinery whereby the wages are frozen." *Id.* at 338-39, 89 S. Ct. at 1821. As the Court later noted in *Mitchell v. W. T. Grant Co., supra,* 416 U. S. at 614, 94 S. Ct. at 1903-04, it was not clear whether, under the statute, the debtor in *Sniadach* could immediately challenge the garnishment and obtain a prompt hearing to determine, at least preliminarily, its merits. Recognizing that a garnishment under the Wisconsin statute "may as a practical matter drive a wage-earning family to the wall," the Court concluded that, because no extraordinary circumstances justified the scheme, "absent notice and a prior hearing . . . this prejudgment garnishment procedure violates the fundamental principles of due process." *Sniadach v. Family Finance Corp., supra,* 395 U. S. at 341-42, 89 S. Ct. at 1822-23.

Three years later, by a four to three decision, the Supreme Court in *Fuentes v. Shevin, supra,* 407 U. S. at 96-97, 92 S. Ct. at 2002-03, concluded that the prejudgment replevin statutes of Florida and Pennsylvania violated the Fourteenth Amendment's due process clause. Each of these statutes authorized

"the issuance of writs ordering state agents to seize a person's possessions, simply upon the *ex parte* application of any other person who claims a right to them and posts a security bond. Neither statute provides for notice to be given to the possessor of the property, and neither statute gives the possessor an opportunity to challenge the seizure at any kind of prior hearing." *Id.* at 69-70, 92 S. Ct. at 1988-89.

In finding the two replevin laws unconstitutional, the Court in *Fuentes* announced that the Fourteenth Amendment right to procedural due process requires, except in extraordinary situations, notice and an opportunity for an adversary-type hearing before a person can be even temporarily deprived of any possessory interest in personalty. *Id.* at 80-87, 92 S. Ct. at 1994-98; *see Mitchell v. W. T. Grant Co., supra,* 416 U. S. at 623, 94 S. Ct. at 1908 (Powell, J., concurring).

However, *Fuentes'* reach exceeded its grasp, as in the next case, *Mitchell v. W. T. Grant Co., supra,* 416 U. S. at 601, 603, 94 S. Ct. at 1897, 1898, the Court upheld a Louisiana statute which permits, without prior notice or an opportunity for a hearing, the sequestration of personalty to enforce the vendor's lien of a creditor who made an installment sale of goods. To obtain a writ of sequestration under the statute, the creditor must accompany his complaint with an affidavit specifying the facts he asserts support his claim and not merely conclusory allegations of ownership or rights in the property; the person who examines the sufficiency of the affidavit's averments and issues the writ is a judge, rather than a court functionary; and the creditor must file a bond which would compensate the debtor for any damages he might suffer as a result of an unjustified sequestration. *Id.* at 605-06, 616, 94 S. Ct. at 1899, 1904-05. Although a creditor can secure a writ by merely filing an ex parte application, the Louisiana statute does allow the debtor to obtain a prompt post-seizure hearing on the issue of possession, and if the creditor fails to

substantiate his claim to the writ the court can order the property returned to the debtor and award damages, including attorney's fees. *Id.* at 606, 610, 618, 94 S. Ct. at 1899, 1901, 1905. Alternatively, whether or not the debtor moves to dissolve the writ, he can regain possession of the property by filing a bond to protect the creditor. *Id.* at 607, 94 S. Ct. at 1900. The existence of the debt, the lien and a delinquency, the Supreme Court said, are

> "ordinarily uncomplicated matters that lend themselves to documentary proof; and we think it comports with due process to permit the initial seizure on sworn *ex parte* documents, followed by the early opportunity to put the creditor to his proof." *Id.* at 609, 94 S. Ct. at 1901.

Distinguishing *Sniadach* and *Fuentes* on their facts, the Court in *Mitchell* concluded that

> "there is scant support in our cases for the proposition that there must be final judicial determination of the seller's entitlement before the buyer may be even temporarily deprived of possession of the purchased goods." *Id.* at 609, 94 S. Ct. at 1901; *see id.* at 607, 94 S. Ct. at 1900.

Rather, the Court stated, due process must take account of the fact that, under Louisiana law, the creditor, as well as the debtor, has a present interest in the property, yet the creditor will lose his interest if the debtor transfers possession. Additionally, the Court noted, the creditor's security will be irrevocably diminished if the installment payments are not kept up so as to parallel the deterioration in value of the property due to its being put to use. *Id.* at 608-09, 94 S. Ct. at 1900-01. In short, the majority concluded that "this statutory procedure effects a constitutional accommodation of the conflicting interests of the parties," and, therefore, satisfied the requirements of due process. *Id.* at 607, 94 S. Ct. at 1900.

Although *Fuentes*, it seemed, was substantially undercut by *Mitchell*, *Mitchell*, in turn, was limited and *Fuentes* was

resuscitated, at least to some extent, by *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U. S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975), the Supreme Court's most recent opinion dealing with prejudgment creditor remedies and due process. *See id.* at 609, 95 S. Ct. at 723 (Powell, J., concurring in the judgment); *id.* at 608, 95 S. Ct. at 723 (Stewart, J., concurring); *id.* at 615-16, 95 S. Ct. at 727 (Blackmun, J., dissenting). In *North Georgia Finishing* the Supreme Court overturned, as contrary to due process, a Georgia statute authorizing prejudgment garnishment in a case in which a commercial bank account had been frozen. Under the Georgia law there were only two prerequisites to obtaining garnishment: (1) the creditor or his attorney had to execute an affidavit before a court clerk stating the amount claimed to be owed and that he had some reason to apprehend the loss of all or some of the debt unless the writ was issued; and (2) the creditor had to file a bond equal to twice the amount claimed to protect the debtor. *Id.* at 602-03, 95 S. Ct. at 720-21. The statute, however, did permit the debtor to dissolve the garnishment by filing a bond. *Id.* at 603, 95 S. Ct. at 721. In discussing *Fuentes* and its effect on the Georgia law, the majority in *North Georgia Finishing* said that

> "Because the official seizures had been carried out [in *Fuentes*] without notice and without opportunity for a hearing or other safeguard against mistaken repossession, they were held to be in violation of the Fourteenth Amendment.
>
> "The Georgia statute is vulnerable for the same reasons. Here, a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer." *Id.* at 606, 95 S. Ct. at 722.

The majority then stated that *Mitchell* did not rescue the Georgia statute because it

"has none of the saving characteristics of the Louisiana statute. The writ of garnishment [under the Georgia law] is issuable on the affidavit of the creditor or his attorney, and the latter need not have personal knowledge of the facts. . . . The affidavit, like the one filed in this case, need contain only conclusory allegations. The writ is issuable, as this one was, by the court clerk, without participation by a judge. Upon service of the writ, the debtor is deprived of the use of the property in the hands of the garnishee. Here a sizable bank account was frozen, and the only method discernible on the face of the statute to dissolve the garnishment was to file a bond to protect the plaintiff creditor. There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment. Indeed, it would appear that without the filing of a bond the defendant debtor's challenge to the garnishment will not be entertained, whatever the grounds may be." *Id.* at 607, 95 S. Ct. at 722-23.

While agreeing that the Georgia law was unconstitutional, but questioning the majority's reliance on *Fuentes*, Mr. Justice Powell concurred in the judgment, adding that he thought

"procedural due process would be satisfied where state law requires that the garnishment be preceded by the garnishor's provision of adequate security and by his establishment before a neutral officer of a factual basis of the need to resort to the remedy as a means of preventing removal or dissipation of assets required to satisfy the claim. Due process further requires that the State afford an opportunity for a prompt postgarnishment judicial hearing in which the garnishor has the burden of showing probable cause to believe there is a need to continue the garnishment for a

sufficient period of time to allow proof and satisfaction of the alleged debt. Since the garnished assets may bear no relation to the controversy giving rise to the alleged debt, the State also should provide the debtor an opportunity to free those assets by posting adequate security in their place." (Footnote omitted.) *Id.* at 611-12, 95 S. Ct. at 725; *see Mitchell v. W. T. Grant Co., supra,* 416 U. S. at 625, 94 S. Ct. at 1909 (Powell, J., concurring).

What we glean from *Sniadach, Fuentes, Mitchell* and *North Georgia Finishing* is that, lacking extraordinary circumstances, statutory prejudgment creditor remedies which even temporarily deprive a debtor of a significant property interest without notice and an opportunity for a prior probable-cause-type hearing are, as held in *Fuentes,* unconstitutional under the Fourteenth Amendment's due process clause unless safeguards such as those mentioned in *Mitchell* and *North Georgia Finishing* are present and even then, although this is less clear, the law may be invalid if the issues underlying the seizure are not susceptible to uncomplicated documentary proof or if the creditor does not have a present interest in the property seized. *See generally,* Catz & Robinson, *Due Process and Creditor's Remedies: From* Sniadach *and* Fuentes *To* Mitchell, North Georgia *and Beyond,* 28 Rutgers L. Rev. 541 (1975); 63 Geo. L. J. 1337 (1975). With this distillate in mind, we now consider the Maryland statute.

As already indicated, a Maryland mechanics' lien is a statutory prejudgment creditor remedy which at least temporarily deprives the owner of a significant property interest. The lien is created as soon as work is performed or materials are supplied, with no requirement of prior notice to the owner. When the claimant is a subcontractor, as is the appellee here, it must, within 90 days of furnishing labor or materials, provide the owner with notice of an intent to make a lien claim. A subcontractor may file his claim with the clerk of the court before he provides the owner with notice of intent to claim a lien, *Accrocco v. Fort Wash.*

*Lumber*, 255 Md. 682, 684, 259 A. 2d 60 (1969), or the subcontractor may not actually file the lien for as long as 180 days after he gave notice of intent to do so. Consequently, notice of intent to claim a lien, which is the only "notice" the owner is required to receive prior to being made aware of a suit to enforce the claim, is not, in our judgment, adequate. The filing of a claim to a lien, although recorded, also does not give the property owner constructive notice of the lien. *See Wm. Penn Supply v. Watterson*, 218 Md. 291, 298, 146 A. 2d 420 (1958). There is no provision requiring any hearing concerning the lien prior to the filing of a suit to enforce it. The statute is the same with respect to general contractors, except that they need not even provide the notice of intent to claim a lien. In short, the Maryland mechanics' lien law permits an owner to be deprived of a significant property interest without notice or a prior hearing,[8] and thus is unconstitutional unless it provides protections such as those discussed in *Mitchell* and *North Georgia Finishing* or it is deemed to be within the "extraordinary circumstances" exception.

Initially, just as the creditor in *Mitchell, supra,* 416 U. S. at 604, 94 S. Ct. at 1898, had a present property interest in the sequestered property as the result of a statutory vendor's lien, general contractors and subcontractors are granted a present property interest in the improved property by Maryland's mechanics' lien law. Similarly, mechanics' liens, like vendor's liens, *Mitchell v. W. T. Grant Co., id.* at 609, 617-18, 94 S. Ct. at 1901, 1905, are capable of proof by documentary evidence. However, Maryland mechanics' liens come into existence upon the furnishing of labor or materials. There is no requirement, as demanded by *Mitchell* and *North Georgia Finishing* that the creditor provide a sworn affidavit on personal knowledge setting forth the facts on which the lien is based, file a bond to

---

**8.** In theory, at least, a subcontractor could provide notice of intent to claim a lien on the day he finished his work or furnished materials, wait 180 days to claim a lien, then one year later file suit to enforce the claim, and only at some point thereafter would the property owner be made aware of the existence of the lien and receive a hearing as to its validity.

protect the debtor, submit the lien to preliminary judicial scrutiny or that the debtor be granted an opportunity for a prompt post-seizure hearing. Even when the lien is filed it is simply presented to a clerk of the court for recordation, without any requirement that it be accompanied by an affidavit or bond or subject to prior judicial participation.[9] While a property owner "may bring proceedings in equity to compel the claimant to prove the validity of [a lien that has been claimed] or have it declared void," Real Property Article, § 9-106; see Rule BG75 a, and might be able to seek a declaratory judgment that the lien is invalid, see Courts and Judicial Proceedings Article, §§ 3-401 to -415, he is not thereby legally entitled to an immediate hearing, as contemplated by the two Supreme Court cases, but only to a hearing in the ordinary course of administering the court's trial assignment calendar. Clearly, Maryland's mechanics' lien law does not come close to satisfying the requirements of *Mitchell* and *North Georgia Finishing* and thus, unless it can be rescued under the extraordinary circumstances exception mentioned in *Fuentes, supra,* 407 U. S. at 90-94, 92 S. Ct. at 1999-2001, and *Sniadach, supra,* 395 U. S. at 339, 89 S. Ct. at 1821, it is unconstitutional to the extent that it permits a prejudgment seizure.

Although the Supreme Court has permitted prejudgment seizures of property without notice or a prior hearing or other safeguards, the Court has only permitted it in extraordinary circumstances in which:

"First, . . . the seizure has been directly necessary

---

9. A claim to a mechanics' lien is merely required to set forth:

"(1) The names of the claimant, the owner or reputed owner of the building, and if the contract is made by the claimant with the contractor, architect, or builder, the name of the contractor, architect, or builder;

(2) The amount or sum claimed to be due, the nature or kind of work or the kind and amount of materials furnished, and the time when the materials were furnished or the work done; and

(3) The locality of the building, and a description adequate to identify the building." § 9-105 (c).

Obviously it is not required to be signed, to state the address of the claimant or to include a copy of the underlying contract.

to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Fuentes v. Shevin, supra,* 407 U. S. at 91, 92 S. Ct. at 2000; *see Sniadach v. Family Finance Corp., supra,* 395 U. S. at 339, 89 S. Ct. at 1821.

A survey of the situations which have been held to be sufficiently extraordinary, *see, e.g., Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U. S. 663, 94 S. Ct. 2080, 40 L.Ed.2d 452 (1974) (seizure of yacht transporting marihuana); *Ewing v. Mytinger & Casselberry, Inc.,* 339 U. S. 594, 70 S. Ct. 870, 94 L.Ed.2d 1088 (1950) (misbranded drugs); *Fahey v. Mallonee,* 332 U. S. 245, 67 S. Ct. 1552, 91 L.Ed.2d 2030 (1947) (bank failure); *North American Cold Storage Co. v. Chicago,* 211 U. S. 306, 29 S. Ct. 101, 53 L. Ed. 195 (1908) (contaminated food), makes it clear that mechanics' liens, like replevin in *Fuentes* and garnishment in *Sniadach,* do not fall within this exception. We conclude, therefore, that, because it allows prejudgment seizures without notice, a prior hearing or other sufficient safeguards, and cannot be justified under the extraordinary circumstances exception, Maryland's mechanics' lien law is incompatible with the due process clauses of Article 23 and the Fourteenth Amendment. The Supreme Court of Connecticut, we note, recently reached a like conclusion, based on a parallel analysis, with regard to that state's mechanics' lien law, which is quite similar to our own. *Roundhouse Constr. Corp. v. Telesco Masons Supplies Co., Inc., supra,* Conn., A. 2d.

In reaching this conclusion we have taken account of the United States Supreme Court's summary affirmance of a three-judge District Court's holding that Arizona's mechanics' lien law, Ariz. Rev. Stat. Ann. §§ 33-981 to -1006

(1974), is constitutional. *Spielman-Fond, Inc. v. Hanson's Inc.*, 379 F. Supp. 997 (D. Ariz. 1973) (per curiam), *aff'd*, 417 U. S. 901 (1974). Contrary to what we here hold with respect to Maryland mechanics' liens, the District Court in *Spielman-Fond* concluded that the imposition of an Arizona mechanics' lien does not deprive an owner of a significant property interest. *Id.* at 999. However, as Chief Justice Burger has stated,

> "When [the Supreme Court] summarily affirms, without opinion, the judgment of a three-judge District Court [the Court] affirms the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established." (Footnote omitted.) *Fusari v. Steinberg*, 419 U. S. 379, 391-92, 95 S. Ct. 533, 541, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring); *see, e.g., Edelman v. Jordan*, 415 U. S. 651, 670-71, 94 S. Ct. 1347, 1359-60, 39 L.Ed.2d 662 (1974).

The Arizona law upheld in *Spielman-Fond*, although it did not provide for notice or a prior hearing, requires the claim to a lien to be made under oath, on personal knowledge and recorded within 60 or 90 days; the owner to be notified within a reasonable time of the filing of the claim; the claimant to institute a suit to enforce the lien within six months after its filing; and permits the owner to discharge the lien by filing a bond. Ariz. Rev. Stat. Ann. §§ 33-993, -998, -1004. Consequently, the Supreme Court may have thought that the Arizona statute contained enough safeguards to satisfy due process; since Maryland's mechanics' lien law lacks most of those protections, we have no trouble in concluding that *Spielman-Fond* is not

dispositive of the issue before us. *But see In re The Oronoka,* 393 F. Supp. 1311, 1317 (D. Me. 1975).

Having concluded that Maryland's mechanics' lien law cannot stand in its present form, we must now decide whether all or only part of it must be abrogated. Code (1957, 1964 Repl. Vol., 1975 Cum. Supp.), Art. 1, § 23, provides that:

> "The provisions of all statutes enacted after July 1, 1973 are severable unless the statute specifically provides that its provisions are not severable. The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent."

Since the lien statute was last reenacted on February 18, 1974, Laws of Maryland 1974, ch. 12, and does not expressly state that it is not severable, § 23 is applicable. Consequently, what Judge Oppenheimer said for this Court in *Sanza v. Md. Board of Censors,* 245 Md. 319, 338, 226 A. 2d 317 (1967), becomes pertinent:

> "The presence of a severability clause raises a presumption of severability, but the clause is merely declaratory of an established rule of construction; it is 'an aid merely, not an inexorable command.' The test is, would the legislative body have enacted the statute or ordinance if it knew that part of the enactment was invalid?"

Or, as expressed for the Court by Judge Prescott in *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 290, 145 A. 2d 111 (1958),

> "The true test of separability is the effectiveness of an act to carry out, without its invalid portions, the original legislative intent in enacting it; and a saving clause will not be given effect where such

invalid provisions affect the dominant aim of the whole statute." *See Anne Arundel County v. Moushabek*, 269 Md. 419, 428, 306 A. 2d 517 (1973).[10]

By enacting the Maryland mechanics' lien statute, the primary intent of the General Assembly was to provide those who had contributed work or materials to the construction of a project with some security that they would be compensated for their contribution.[11] *Palmer Park Ltd. v. Marvelite, Inc., supra*, 255 Md. at 125, *quoting Bounds v. Nuttle*, 181 Md. 400, 406, 30 A. 2d 263 (1943); *cf. Cook v. Carlson, supra*, 364 F. Supp. at 27, 29. The statute itself, we note, specifically states that "[t]his law is remedial and shall be so construed to give effect to its purpose." § 9-110; *see Freeform Pools v. Strawbridge, supra*, 228 Md. at 301. If it is possible, then, and we think it is, to delete the aspect of the statute which renders it unconstitutional — its taking of property without providing sufficient safeguards — while still preserving enough to have a law capable of fulfilling the

---

**10.** Although made with respect to a statute not containing a severability clause, Judge Cardozo's statement in People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N. Y. 48, 129 N. E. 202, 207 (1920), *cert. denied*, 256 U. S. 702 (1921), quoted with approval by this Court in Baltimore City v. Stuyvesant Co., 226 Md. 379, 391, 174 A. 2d 153 (1961), is equally applicable:

"In [New York], we have gone far in subdividing statutes, and sustaining them so far as valid. * * * The tendency is, I think, a wholesome one. Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment. * * * The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch, instead of at the roots."

**11.** One of the key aspects of the lien law is that it creates a remedy against the property, thus effectively against the owner, for subcontractors who perform their contractual obligations but are not paid. In such situations, although the owner benefits by receiving materials or labor from the subcontractor, the subcontractor, not being in privity with the owner, cannot sue him in contract; in fact, aside from the statutory lien, subcontractors are remediless with respect to the property and the owner. While such subcontractors would still have a separate and distinct cause of action in contract against the party with whom they had contracted, § 9-109; *see* Port City Constr. v. Adams & Douglass, 260 Md. 585, 593, 273 A. 2d 121 (1971), that party may have become insolvent or simply vanished.

principal legislative intent, we must do so. We think that this can be accomplished by excising that portion of the statute which purports to create a lien from the time work is performed or materials furnished to the time a lien is established by judicial determination in a proceeding sufficient with respect to due process. We therefore hold that under the current statute there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (*i.e.*, a declaratory judgment action).[12] What the claimant, be he a general contractor or subcontractor, possesses up to that point in time is a chose in action. Under this ruling, we believe, the statute continues to effectuate the primary legislative intent, yet the owner is not deprived of a significant property interest without due process since the owner's interest is not impinged upon until after he is provided with notice and an opportunity for a hearing. It follows that § 9-107 (b), to the extent that it grants mechanics' liens "priority over any mortgage, judgment, lien or encumbrance attaching to the building or ground subsequent to the commencement of the building" but prior to the time the lien is established by a judicial determination, is also null and void since to hold otherwise would permit contractors to seize with their left hand what we have said they cannot grasp with their right.[13] We add, however, in case there be any doubt, that contractors, in order to obtain and enforce a lien, must still comply with the various procedural prerequisites — including, but not limited to, furnishing notice of intent to claim a lien if the claimant is a

---

**12.** We do not here hold that the Legislature could not enact a mechanics' lien law permitting general contractors and subcontractors to obtain liens prior to owners being given notice and an opportunity for a hearing if the statute includes safeguards such as those discussed in Mitchell v. W. T. Grant Co., 416 U. S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974) and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U. S. 601, 95 S. Ct. 719, 42 L.Ed.2d 751 (1975). Rather, in this case, we only hold that since the present law does not include such safeguards no lien can exist under it until after owners are provided with notice and a chance for a hearing.

**13.** As the issue is not before us, we do not decide the constitutionality of § 9-107 (a), which pertains to priority among holders of mechanics' liens.

subcontractor, filing a claim, and instituting appropriate legal actions, all within the specified time periods.

We now examine the case as it stands before us to determine whether the appellant is being deprived of its property without due process; we conclude that it is not. Initially,. we note, those portions of the statute we hold unconstitutional are void *ab initio* and thus we must measure the appellant's position with respect to the statute as it stands free of those provisions. The facts of this case show that the appellant knew of the appellee's claim to a lien sometime well prior to the appellee's institution of this enforcement action but chose not to challenge the lien's validity at that point; we conclude it hereby elected not to assert any right it may have had to have its position determined as of a time earlier than the hearing before Judge Haile.[14] And as is plain from what we have said, Fick did not legally divest Barry of any interest in its property prior to Judge Haile's determination that Fick was entitled to a lien since the appellee had nothing but a possibility of a lien until that decision was made. In these proceedings to enforce Fick's lien claim, before Judge Haile ruled in the appellee's favor, the appellant was provided with notice and a hearing. Since Barry does not question the due process adequacy of that notice or of that hearing, and has agreed that Fick satisfied the statutory prerequisites to bringing

---

**14.** In this regard, we mention that in neither *North Georgia Finishing, Mitchell, Fuentes* nor *Sniadach*, in contradistinction to this case, was there an adjudication on the merits of the creditor's claim. Rather, in each of those cases the property owner sought, by way of an injunction, declaratory judgment, motion to dismiss, motion to dissolve or some other similar procedure, to defeat the particular prejudgment creditor remedy at a point prior to an adjudication on the merits, with the appeal being taken from the denial of the requested action and without there being a determination of the underlying claim. North Georgia Finishing, Inc. v. Di-Chem, Inc., *supra,* 419 U. S. at 603-05, 95 S. Ct. at 721; Mitchell v. W. T. Grant Co., *supra,* 416 U. S. at 601-03, 94 S..Ct. at 1897-98; Fuentes v. Shevin, 407 U. S. 67, 70-73, 92 S. Ct. 1983, 1989-90, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U. S. 337, 337-38, 89 S. Ct. 1820, 1820-21, 23 L.Ed.2d 349 (1969); *cf.* Sugar v. Curtis Circulation Co., *supra,* 383 F. Supp. at 644-45; Roundhouse Constr. Corp. v. Telesco Masons Supplies Co., Conn. A.2d [February Term, 1975, denied April 22, 1975], *vacated and remanded,* U.S., 96 S. Ct. 20 (1975), *reaffirmed,* Conn., A. 2d [decided January 27, 1976].

this action, we conclude that the appellant was afforded due process prior to being deprived of its property through these enforcement proceedings.

> *Decree of the Circuit Court for Baltimore County affirmed. Appellant to pay the costs.*

*Levine, J., dissenting:*

With the exception of the concluding paragraph, I am in agreement with the opinion of the majority. But since I cannot join in the ultimate conclusion and the mandate of the Court, I respectfully dissent.

It may well be that I simply do not fully understand the majority opinion, but as I read it this much is clear. As the majority itself postulates, "[t]he question with which we are confronted in this case is whether Maryland's present mechanics' lien law is compatible with the due process clauses of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution." The majority concludes that "in light of the effect a Maryland mechanics' lien has on property, . . . an owner is deprived of a 'significant property interest' when a lien is imposed and thus, the limitations of due process are applicable." The majority then finds that since the statute deprives Maryland property owners of this significant property interest "without notice, a prior hearing or other sufficient safeguards, and cannot be justified under the extraordinary circumstances exception," it is "incompatible with the due process clauses of Article 23 and the Fourteenth Amendment."

For these reasons, the majority "conclude[s] that Maryland's mechanics' lien law cannot stand in its present form[.]" It thereupon proceeds to excise "that portion of the statute which purports to create a lien from the time work is performed or materials furnished to the time a lien is established by judicial determination in a proceeding sufficient with respect to due process." The majority then

holds "that *under the current statute* there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (*i.e.*, a declaratory judgment action)." (emphasis added).

I submit, as footnote 12 of the majority opinion confirms, that all this amounts to a clear-cut holding that the statute is facially unconstitutional, and with that conclusion I am in full accord. But I part company from the majority when, having found the statute facially unconstitutional, it then somehow decides in the final paragraph that the statute is constitutional as applied in this case. I am simply unable to fathom how a law, if facially violative of the Fourteenth Amendment, can be applied, in the very case requiring the determination of unconstitutionality. If all property owners are deprived of due process by the statute, how can it be said that appellant is not?

If this particular owner has not been deprived of its property without due process by reason of the hearing which it was ultimately afforded, a hearing which is available to all property owners, why then is the statute not facially constitutional? Alternatively, is not the purported holding of unconstitutionality merely dicta, an advisory opinion, in light of the ultimate holding that this appellant did not suffer a denial of due process?

The majority answers these questions with its own brand of wizardry: it reasons that although the statute is facially unconstitutional, the part which makes it so may be excised by holding that a lien does not arise until a determination of validity is made in an enforcement proceeding. Since appellant has been afforded such a proceeding, therefore, its constitutional rights have not been violated. In sum, reasons the majority, the statute is facially unconstitutional since it permits, as occurred here, a significant deprivation of property prior to notice and hearing; but because such a procedure is unconstitutional, there could be no valid lien; and since there was no lien, appellant suffered no deprivation.

The flaw in the majority's syllogism is that appellant suffered the deprivation of a significant property interest, as found by the majority itself. Otherwise, of course, the statute could not have been deemed facially unconstitutional in the first instance. Appellant was either deprived of due process or he was not, and if he was, the deprivation cannot be rectified by acknowledging it on the one hand and ignoring it on the other. If it is the view of the majority that appellant suffered no denial of due process, that holding is dispositive of the case and this Court has no business in purporting to hold the lien statute facially unconstitutional.

Since I believe that the statute *is* facially unconstitutional for the reasons so thoroughly expounded by the majority, I would reverse the decree of the circuit court.

Judge Eldridge authorizes me to state that he concurs in the views herein expressed.